[Cite as *State v. Stuckman*, 2018-Ohio-4050.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio

        Appellee

v.

Armis Stuckman aka Justin Harris

        Appellant

Court of Appeals Nos. S-17-039
S-17-040

Trial Court Nos. 17CR236
17CR331

**DECISION AND JUDGMENT**

Decided: October 5, 2018

* * * * *

Timothy Braun, Sandusky County Prosecuting Attorney, and
Mark E. Mulligan, Assistant County Prosecutor, for appellee.

James H. Ellis III, for appellant.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** In this consolidated appeal, appellant, Armis Stuckman aka Justin Harris

("Stuckman"), appeals a jury verdict finding him guilty of two counts of burglary in

violation of R.C. 2911.12(A)(2); grand theft in violation of R.C. 2913.02(A)(1), with a

firearm specification; attempted aggravated murder in violation of R.C. 2903.01(B) and

2923.02; aggravated robbery in violation of R.C. 2911.01(A)(1); felonious assault in violation of R.C. 2903.11(A)(2); theft in violation of R.C. 2913.02(A)(1); and receiving stolen property in violation of R.C. 2913.51(A).

{¶ 2} In an order journalized on September 11, 2017, the Sandusky County Court of Common Pleas sentenced Stuckman to an aggregated term of 19 years in prison for these eight convictions, and ordered Stuckman to pay restitution to the two burglary victims.

{¶ 3} For the reasons that follow, we affirm the judgment below.

## I. Background

{¶ 4} Stuckman's convictions relate to three separate incidents: (1) a burglary at the residence of "J.P." on November 21, 2016; (2) a burglary at the residence of "J.S." on December 4, 2016; and (3) the attempted aggravated murder of "M.R." on November 24, 2016.

### 1. The Burglary of J.P.'s Residence on November 21, 2016

{¶ 5} J.P. lives in Vickery, Ohio. On November 21, 2016, J.P. locked his house and went to work on his farm. When he returned, he found that someone had broken the lock on his door. He entered the house and saw that several items had been stolen, including his mother's pink jewelry box, two diamond rings, a bracelet, a gold Timex watch, and a Chinese SKS assault rifle, which the state presented into evidence as exhibit No. 1 at trial. J.P. identified exhibit No. 1 as the SKS assault rifle that was stolen from his house.

2.

**{¶ 6}** Stuckman's ex-girlfriend, C.S., testified at trial. C.S. testified that she knew Stuckman as both "Shadow" and Justin Harris. C.S. was occasionally homeless and transient. While they were together, C.S. and Stuckman stayed in several different places, including a Cadillac. The Cadillac was filled with many items that were later determined to be relevant to the other two incidents at issue in this case (the November 24, 2016 burglary and the December 4, 2016 attempted aggravated murder), as well as various items bearing the name "Justin Harris," which C.S. testified belonged to Stuckman. Notably, in a recorded phone conversation, Stuckman asked C.S. why she handed over items from the car to the police, and asked "how do they know about the car, about the Cadillac?"

**{¶ 7}** Regarding the burglary of J.P.'s residence on November 21, 2016, C.S. testified that she went with Stuckman to Vickery that day. They parked a distance from a house, they saw the owner leave, and then Stuckman told C.S. that he "had to get some stuff that he left there." After about ten minutes, Stuckman came out with "all the stuff" including jewelry, tools, and a gun. C.S. identified exhibit No. 1 as the gun that Stuckman took from the house. She testified that she and Stuckman then went to Grant Street in Fremont, to a guy named "Rick's" house, and Stuckman took the rifle inside the house while she stayed in the car.

**{¶ 8}** R.P. testified that he met Stuckman, whom he knew as both "Shadow" and "Stuckman," while he was in jail serving a DUI conviction in 2015. He testified that Stuckman had taken a .38 handgun from him, and R.P. told him that he was going to the

authorities if Stuckman did not "make things right." Stuckman told him that he would sell him an M1 carbine that was "personally his" for $100, and they could "call it even." Stuckman then presented him with an SKS rifle (not an M1 carbine), and R.P. ended up just "taking it" from him because he claimed that it was worth less than the .38 handgun, which he said was a valuable collector's gun. R.P. then took the SKS rifle apart to fix it.

{¶ 9} Approximately two weeks later, Detective Kenneth Arp received a tip that the stolen SKS rifle was at a specific house on Grant Street in Fremont—R.P.'s residence. He went to that address, and R.P. came to the door. Detective Arp inquired about the SKS rifle, and R.P. stated that he had been given an SKS rifle approximately two weeks ago and was in the process of fixing it. R.P. then retrieved the pieces that he had taken apart, put the SKS rifle back together, and gave it to Detective Arp. At trial, Detective Arp identified exhibit No. 1 as the SKS rifle that he received from R.P.

{¶ 10} R.P. identified Stuckman in a photo lineup as the person who gave him the SKS rifle. R.P. denied knowing that the rifle was stolen.

## 2. The Burglary of J.S.'s Residence on December 4, 2016

{¶ 11} J.S. lives in an apartment on S. Buchanan Street in Fremont, Ohio. On December 4, 2016, a friend of his named Z.H. (who was also acquainted with Stuckman) called him and said that she was at the Days Inn on Route 53, and asked J.S. to "bring her something to drink." J.S. drove out to the Days Inn, but Z.H. was not there. J.S. then returned home and found that his apartment had been burglarized. Several items were missing from his apartment including two flat screen televisions, a PlayStation, numerous

4.

hats and shoes, coats, and a wedding ring. He identified exhibit No. 24 as a pair of his stolen shoes, and exhibit No. 26 as one of his stolen hats. J.S. testified that he called Z.H., told her that his neighbors saw a blonde girl in a Fremont Ross t-shirt robbing his apartment, and Z.H. confessed to him. J.S. and Z.H. then went to the police station, where she made a written statement.

{¶ 12} Z.H. testified at trial. She said that she knew Stuckman—whom she knew as both "Shadow" and Justin—from hanging around the Double A Motel, where they would do drugs together. She said that Stuckman and another man, D.H., called her and said they needed money. At the time she received their call, she was standing outside J.S.'s apartment. Z.H. told them to come rob J.S.'s place.

{¶ 13} Z.H. went in through a window, and unlocked J.S.'s door for Stuckman and D.H. She testified that they stole televisions, about 20 pairs of shoes, hats, a PlayStation, and jewelry. At trial, Z.H. identified exhibit No. 24 as J.S.'s black Air Force Nikes and exhibit No. 26 as J.S.'s COOGI hat—both of which they stole from J.S.'s apartment. Notably, the police had obtained J.S.'s shoes (exhibit No. 24) and hat (exhibit No. 26) from the Cadillac that Stuckman sometimes stayed in with his ex-girlfriend, C.S.

{¶ 14} Z.H. testified that a few hours after the burglary of J.S.'s apartment, J.S. sent her a Facebook message with a photo taken by his neighbors that showed Z.H. and two other people robbing the house. Z.H. said that she then confessed to J.S., and the two of them met at Advance Auto Parts and then went to the police station where she provided a written statement. In Z.H.'s statement, which she read at trial, Z.H. stated that

5.

a few weeks prior, "Shadow 'Justin'" told her about "slicing the guy's neck at [the] Double A Motel" (i.e., the attempted aggravated murder charge against Stuckman in this case, which will be discussed in further detail below.) Z.H. said that ever since he told her that, Stuckman "threatened to kill me if I didn't do anything he asked"—which is why she told him to rob J.S.'s house when he asked for "somebody he can rob."

{¶ 15} At trial, Z.H. elaborated on her conversation with Stuckman regarding him "slicing" M.R.'s neck.

### 3. The Attempted Aggravated Murder of M.R. on November 24, 2016

{¶ 16} Z.H. testified that she met Stuckman around 9:00 a.m. on November 24, 2016—which was Thanksgiving day—and they went to Kroger. There, Stuckman "went in to swipe a credit card while [Z.H.] was rolling a blunt." She said that he came back with beer and money, and they went to Walsh Park. When they were at Walsh Park, Z.H. asked Stuckman where he got the money and credit cards, and Stuckman said that "if he told me, he'd have to kill me." Z.H. laughed it off, and then Stuckman told her that he "sliced some dude's throat" and that it happened there, at Walsh Park. Stuckman told Z.H. that it was "the drunk dude that stays out at Double A." Z.H. then asked if he meant "the dude that stayed in 209" and he said "yeah." Z.H. told Stuckman that guy was her "buddy." Z.H. did not initially believe Stuckman, but a few minutes later she checked Facebook and saw a news report that "some dude at Double A got his neck sliced." At trial, Z.H. described the victim as a man with "shaggy hair, worked all the time, stayed in

6.

209, stayed drunk but he kept his job" and identified a mugshot photo of M.R. as that man.

{¶ 17} M.R. testified at trial. M.R. lived in room 209 at the Double A motel in Fremont, Ohio. He got off work during the early morning hours of November 23, 2016, and went back to his motel room to sleep. He woke up in the early evening, went to a bar and had a few beers, and then came back to the motel where he "rested" some more. At some point during the night, he woke up and met a "black guy" at the motel. M.R. left the motel with him because the guy said "something about a party or something, something going on somewhere." They got into a car, and while they were driving, M.R. told the guy that he had to pee. The guy pulled the car into Walsh Park, and M.R. got out of the car. While he was urinating in the park, the guy put his arm around him, put a knife to his throat, and grabbed M.R.'s wallet from his back pocket. The two struggled, and the guy slashed his throat and took off with M.R.'s wallet.

{¶ 18} M.R. testified that his wallet contained $400 cash, a pay card with $500 left on it, his social security card, and his First Federal Bank ID card. Notably, the police eventually recovered M.R.'s Fremont Federal bank card (exhibit No. 30) and social security card (exhibit No. 31) from the Cadillac that Stuckman shared with his ex-girlfriend C.S.—i.e., the same car that contained J.S.'s stolen property.

{¶ 19} M.R. testified that after the guy took off, he walked back to the Double A motel from Walsh Park, where he called 911. Officer Christian Ortolani was dispatched to the Double A motel in response to the call. Officer Ortolani testified that he knocked

7.

on room 209 around 5:00 a.m., and saw that the man who answered the door was intoxicated and his throat was cut. The officer took photos of the scene, which were offered into evidence. The man told Officer Ortolani that his throat was slashed at "the park." Officer Ortolani later found blood in the lobby of the Double A motel and followed a blood trail out the door. The blood trail eventually led police to a picnic table at Walsh Park, where the trail stopped.

{¶ 20} At some point, the police showed M.R. a photo array, but he was unable to identify his attacker.

## II. The Indictments

{¶ 21} On March 9, 2017, a Sandusky County Grand Jury indicted Stuckman in case No. 17CR236 on one count of receiving stolen property, in violation of R.C. 2913.51(A), a fourth-degree felony. This charge related to J.P.'s stolen SKS rifle.

{¶ 22} On April 4, 2017, a Sandusky County Grand Jury indicted Stuckman in case No. 17CR331 on eight counts: (1) burglary in violation of R.C. 2911.12(A)(2),[1] a second-degree felony; (2) grand theft in violation of R.C. 2913.02(A)(1), a third-degree felony, with a firearm specification under 2929.14; (3) attempted aggravated murder, in

---

[1] Although the indictment initially stated that Stuckman was charged with burglary in violation of R.C. 2911.12(A)(1), the state moved to amend the indictment on the grounds that the "(1)" was a typographical error and it should have referenced R.C. 2911.12(A)(2) instead. Over Stuckman's objection, the trial court granted the state's motion to amend the indictment to reflect that Stuckman was charged with a violation of R.C. 2911.12(A)(2). Stuckman has not assigned any error related to that amendment of the indictment.

8.

violation of R.C. 2903.01(B) and 2923.02, a first-degree felony; (4) aggravated robbery, in violation of R.C. 2911.01(A)(1), a first-degree felony; (5) felonious assault, in violation of R.C. 2903.11(A)(2), a second-degree felony; (6) burglary, in violation of R.C. 2911.12(A)(2), a second-degree felony; (7) theft, in violation of R.C. 2913.02(A)(1), a fifth-degree felony; and (8) resisting arrest, in violation of R.C. 2921.33(A), a second-degree misdemeanor. Counts 1 and 2 related to the events of November 21, 2016; Counts 3, 4, and 5 related to the events of November 24, 2016; and Counts 6 and 7 related to the events of December 4, 2016.

{¶ 23} On June 8, 2017, Stuckman moved to sever the trial of case No. 17CR236 (involving one count of receiving stolen property) from the trial of case No. 17CR331, arguing that he was prejudiced by the joinder of the indictments.

{¶ 24} In a written order dated July 11, 2017, the trial court denied the motion with respect to case No. 17CR236 and Counts 1-7 of case No. 17CR331. The court found, however, that the charge of resisting arrest, Count 8 of case No. 17CR331, was sufficiently separate from the other charges and ordered that it be tried separately.[2]

### III. The Jury Verdict and Sentence

{¶ 25} The matter proceeded to trial, and the jury found Stuckman guilty on all counts. On September 7, 2017, the trial court held a sentencing hearing.

---

[2] The state eventually entered a nolle prosequi for Count 8 of case No. 17CR331.

{¶ 26} The court determined that Count 1 (burglary) and Count 2 (grand theft, with a firearm specification) in case No. 17CR331, which related to the crimes against J.P. on November 21, 2016, were allied offenses of similar import under R.C. 2941.25 and should, therefore, merge. The state elected to proceed with Count 1 (burglary), and the trial court sentenced Stuckman to eight years in prison for that burglary conviction.

{¶ 27} The court determined that Count 3 (attempted aggravated murder), Count 4 (aggravated robbery), and Count 5 (felonious assault), which related to the crimes against M.R. on November 24, 2016, were allied offenses of similar import under R.C. 2941.25 and should, therefore, merge. The state elected to proceed with Count 3 (attempted aggravated murder), and the court sentenced Stuckman to 11 years in prison for that conviction.

{¶ 28} The court also determined that Count 6 (burglary) and Count 7 (theft), which related to the crimes against J.S. on December 4, 2016, were allied offenses of similar import under R.C. 2941.25 and should, therefore, merge. The state elected to proceed with Count 6 (burglary), and the court sentenced Stuckman to four years in prison for that burglary conviction.

{¶ 29} Finally, with respect to Stuckman's conviction in case No. 17CR236 for receiving stolen property (i.e., the stolen SKS rifle) the court sentenced Stuckman to 12 months in prison.

{¶ 30} The court ordered the sentences imposed in Counts 1 and 6 in case No. 17CR331 and Count 1 in case No. 17CR236 to be served concurrently, and the sentence

10.

imposed in Count 3 of case No. 17CR331 to be served consecutively to the other sentences, for an aggregate term of 19 years in prison. The court ordered Stuckman to pay the costs of prosecution and restitution in the amount of $200 to J.P. and $4,850 to J.S.

{¶ 31} The court's judgment entry was journalized on September 11, 2017, and this appeal followed. Stuckman asserts the following assignments of error on appeal:

A. FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SEVER COUNT ONE IN THE INDICTMENT IN CASE NO. 17CR236 FROM THE COUNTS IN THE INDICTMENT IN CASE NO. 17CR331.

B. SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL ON THE CHARGES OF ATTEMPTED AGGRAVATED MURDER, AGGRAVATED ROBBERY AND FELONIOUS ASSAULT.

C. THIRD ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED BY GRANTING THE MOTION OF THE STATE TO AMEND THE INDICTMENTS AT TRIAL TO IDENTIFY APPELLANT BY HIS ACTUAL NAME ALONG WITH A NAME THAT IS NOT HIS.

{¶ 32} We consider each of these assignments of error in turn.

11.

**1. The Joinder of Case Nos. 17CR236 and 17CR331**

{¶ 33} On June 8, 2017, Stuckman moved to sever the trial of case No. 17CR236 (involving one count of stolen property) from the trial of case No. 17CR331, arguing that he was prejudiced by the joinder of the indictments. In his written motion, Stuckman argued that by joining cases involving "a series of separate actions on five different dates," the state was "attempting to paint the defendant as a bad person with a broad brush creating a substantial risk of confusing the jury leading to convictions on counts where the evidence is weak or insufficient." The trial court conducted a hearing on the motion to sever, as well as several other pretrial motions, on July 7, 2017. The record, however, does not contain a transcript of those proceedings.

{¶ 34} Although the motion asked the court to sever case No. 17CR236 from case No. 17CR331, the trial court treated it as a motion to sever all counts of the two cases from each other. In a written order dated July 11, 2017, the trial court denied the motion with respect to case No. 17CR236 and Counts 1-7 of case No. 17CR331. The court stated that it intended to issue cautionary instructions to the jury to consider only the evidence offered on each charge, and that those instructions "will prevent any likelihood that the jury will improperly associate guilt from one charge to the other." The court found that the charge of resisting arrest, Count 8 of case No. 17CR331, was sufficiently separate from the other charges and ordered that it be tried separately.

{¶ 35} In his first assignment of error, Stuckman argues that the trial court abused its discretion in denying his motion to sever. Stuckman does not argue that any of the

12.

counts of case No. 17CR331—which related to three separate incidents on November 21, 2016, November 24, 2016, and December 4, 2016—should have been severed from each other. Rather, Stuckman argues that the trial court abused its discretion by not ordering separate trials for case No.17CR236 (involving one count of receiving stolen property) and case No. 17CR331, and that he was prejudiced by the joinder of the two cases for trial.

{¶ 36} Under Crim.R. 13, a court may order two or more cases to be tried together "if the offenses * * * could have been joined in a single indictment * * *." Multiple offenses may be joined in a single indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). It is well-settled that joinder is favored and is to be "liberally permitted." *State v. Scott*, 6th Dist. No. S-02-026, 2003-Ohio-2797, ¶ 13, quoting *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992). "The law favors joinder for public policy reasons, such as: to conserve judicial economy and prosecutorial time; to conserve public funds by avoiding duplication inherent in multiple trials; to diminish the inconvenience to public authorities and witnesses; to promptly bring to trial those accused of a crime; and to minimize the possibility of incongruous results that can occur in successive trials before different juries." *Id.*, quoting *State v. Dunkins*, 10 Ohio App.3d 72, 460 N.E.2d 688 (9th Dist.1983), paragraph one of syllabus.

13.

{¶ 37} Although joinder is well-favored by Ohio law, a defendant may move to sever the charges under Crim.R. 14 upon a showing of prejudice. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). "If a motion to sever is made at the outset of a trial, it must be renewed at the close of the state's case or at the conclusion of all of the evidence so that a Crim.R. 14 analysis may be conducted in light of all the evidence presented at trial." *State v. Rojas*, 6th Dist. Lucas No. L-11-1276, 2013-Ohio-1835, ¶ 34, citing *State v. Hoffman*, 9th Dist. Summit No. 26084, 2013-Ohio-1021, ¶ 8. If a motion to sever is not renewed, then the issue is waived for purposes of appeal. *Id.* Here, Stuckman renewed his pre-trial motion to sever at the close of the state's case, which preserved the issue for our review.

{¶ 38} To prevail on his claim on appeal that the trial court erred in denying his motion to sever, Stuckman bears the burden of demonstrating that his rights were prejudiced and he must also "affirmatively demonstrate * * * that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial." *Schaim* at 59.

{¶ 39} In response, the state can use two methods to defeat a defendant's claim of prejudice under Crim.R. 14: the "other acts" test *or* the more lenient "joinder" test. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). Under the other acts test, the state must show that evidence of the other charged offenses would be admissible as "other acts" under Evid.R. 404(B) even if the counts are severed for trial. *State v.*

14.

*Gibson*, 6th Dist. Lucas Nos. L-13-1222 and L-13-1223, 2015-Ohio-1679, ¶ 28, citing

*State v. Townsend*, 6th Dist. Lucas No. L-00-1290, 2002-Ohio-2289.  Under the joinder

test, the state can defeat a claim of prejudice by showing that the jury is capable of

separating the proof of each crime because the evidence of each crime is simple and

direct.  *Id.*  "Ohio appellate courts routinely find no prejudicial joinder where the

evidence is presented in an orderly fashion as to the separate offenses or victims without

significant overlap or conflation of proof."  *State v. Lewis*, 6th Dist. Lucas No.

L-09-1224, L-09-1225, 2010-Ohio-4202, ¶ 33.

{¶ 40} Putting aside for a moment the issue of prejudice, Stuckman has failed to

"affirmatively demonstrate * * * that at the time of the motion to sever he provided the

trial court with sufficient information so that it could weigh the considerations favoring

joinder against the defendant's right to a fair trial."  *Schaim* at 59.  In his written motion

to sever, Stuckman merely argued—in pure conclusory fashion—that joinder was

inappropriate because the state was "attempting to paint the defendant as a bad person

with a broad brush creating a substantial risk of confusing the jury leading to convictions

on counts where the evidence is weak or insufficient."  Stuckman did not offer any

further explanation.  And, although it is possible that Stuckman provided additional

information to the trial court during the July 7, 2017 hearing on his motion to sever,

Stuckman failed to file a transcript of that hearing.  We must therefore assume regularity

in the proceedings.  *See Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400

N.E.2d 384 (1980).  Accordingly, we find that Stuckman failed to provide the trial court

15.

with any specific information that would have enabled it to undertake the weighing test outlined in *Schaim*. *See State v. Wells*, 7th Dist. Jefferson No. 98-JE-3, 2000 Ohio App. LEXIS 1219, *28 (Mar. 22, 2000) (finding that appellant "failed to appraise the trial court of the particular evidence it anticipated would be used with respect to the different offenses charged. As such, the trial court did not have sufficient information before it to weigh the considerations favoring joinder against appellant's right to a fair trial.").

{¶ 41} Regardless, we also find that the trial court did not abuse its discretion when it denied Stuckman's motion to sever case No. 17CR236, which involved only one count of receiving stolen property, from case No. 17CR331. Our review of the record reveals that the evidence related to the receiving-stolen-property charge of case No. 17CR236 —i.e., evidence that Stuckman had obtained a stolen SKS rifle, that was identified as belonging to J.P., before he provided that same SKS rifle to R.P.—was simple, direct, and capable of being separated from the evidence relating to the charges at issue in case No. 17CR331. Accordingly, the "joinder test" is satisfied.

{¶ 42} For these reasons, we find Stuckman's first assignment of error not well-taken.

### 2. The Sufficiency of the Evidence

{¶ 43} In his second assignment of error, Stuckman claims that his convictions for attempted aggravated murder, aggravated robbery, and felonious assault—which relate to M.R. and the events of November 24, 2016—were not supported by sufficient evidence and that the trial court erred in denying his Crim.R. 29 motion for acquittal. He asserts

16.

that these three convictions lack sufficient evidence because, he argues, they were based on Z.H.'s testimony and "[t]here was no evidence to corroborate this testimony." That is, Stuckman complains that there was no DNA evidence or surveillance footage proving that he committed the crimes, and no "information concerning the vehicle used in the crime." He also points out that M.R. was unable to positively identify Stuckman as his assailant.

{¶ 44} A claim for insufficiency of the evidence and denial of a motion for acquittal are reviewed under the same standard. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 45} Stuckman challenges the sufficiency of the evidence supporting three convictions: attempted aggravated murder, aggravated robbery, and felonious assault. The trial court merged these three convictions as allied offenses of similar import under R.C. 2941.25.

17.

**{¶ 46}** Stuckman was convicted of attempted aggravated murder in violation of R.C. 2923.02(A) and 2903.01(B). An "attempted" crime occurs when a person "purposefully or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense * * * engage[s] in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A). The attempted "offense" here was aggravated murder under R.C. 2903.01(B), which states that "[n]o person shall purposefully cause the death of another * * * while committing or attempting to commit * * * aggravated robbery * * *."

**{¶ 47}** Stuckman was convicted of aggravated robbery under R.C. 2911.01(A)(1), which states "No person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person * * * and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *." A "deadly weapon" means "any instrument, device, or thing capable of inflicting death." R.C. 2923.11(A).

**{¶ 48}** Finally, Stuckman was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."

**{¶ 49}** Viewing the evidence in a light most favorable to the prosecution, we find that the state presented sufficient evidence that Stuckman committed these offenses on November 24, 2016, at Walsh Park when he slashed M.R.'s neck and grabbed M.R.'s wallet from the back pocket of his pants. Most importantly, Z.H. testified that Stuckman

18.

confessed these crimes to her shortly after their commission. Although Stuckman complains that Z.H. was not a credible witness, we do not assess witness credibility when reviewing evidence for legal sufficiency—rather, we defer to the jury's findings in evaluating the credibility of each witness. Moreover, we note that Z.H.'s testimony was corroborated by additional evidence in the record. That is, Z.H.'s story was consistent with M.R.'s first-hand testimony of how the crimes occurred, as well as the blood trail that police followed from the lobby of the Double A motel to a picnic bench at Walsh Park. Finally, the police recovered M.R.'s stolen Fremont Federal bank card and social security card from the Cadillac that Stuckman shared with his ex-girlfriend C.S. There was therefore sufficient evidence to establish each element of the attempted aggravated murder, aggravated robbery, and felonious assault charges against Stuckman.

{¶ 50} For these reasons, we find Stuckman's second assignment of error not well-taken.

### 3. The Pre-Trial Amendment of the Indictment

{¶ 51} In his third assignment of error, Stuckman argues that the trial court erred by granting the state's pretrial motion to amend the indictments to include Stuckman's real name, Justin Harris.

{¶ 52} Under Crim.R. 7, a trial court may amend an indictment at "any time before, during, or after a trial * * * in respect to any defect, imperfection, or omission in form or substance * * * provided no change is made in the name or identity of the crime

19.

charged." We review a trial court's decision to amend an indictment under an abuse-of-discretion standard. *State v. Gray*, 9th Dist. Summit No. 27365, 2015-Ohio-1248, ¶ 7.

{¶ 53} Shortly before the jury trial began, the court addressed a pretrial motion by the state outside the presence of the jury. On the record, the trial judge stated that he had just learned that the defendant's name was actually Justin Harris and not Armis Stuckman. The state confirmed that Armis Stuckman is apparently the defendant's alias, his real name is Justin Harris, and that he uses both names interchangeably. The state then moved to amend the indictment to read Armis Stuckman, aka Justin Harris, arguing that the defendant had been on notice of this issue since the indictments were issued, and this amendment "simply corrects an error really promulgated by Stuckman himself." Stuckman's counsel expressly acknowledged that his "real identity was Justin Harris," but he objected to amending the indictment "at the eleventh hour" because, he argued, the change to the indictment "gives him the appearance of guilt."

{¶ 54} The court granted the state's motion to amend the indictment to read state of Ohio versus Justin K. Harris, also known as Armis Stuckman. When granting the motion, the court referenced R.C. 2941.56, which states:

> If the accused pleads in abatement that he is not indicted by his true name, he must plead his true name which shall be entered on the minutes of the court. After such entry, the trial and proceedings on the indictment shall be had against him by that name, referring also to the name by which he is indicted, as if he had been indicted by his true name.

20.

{¶ 55} The court agreed with the state that it was Stuckman's duty to bring this issue to the court, and Stuckman's fault that this amendment was occurring "at the eleventh hour." The court stated:

> [T]he Defendant has laid low, has signed the bond forms that the Court put in front of him in my presence signing his name as Armis Stuckman, never raising an issue about his identity in this case – never, never. The Defendant is not going to benefit by laying low in his own wrongdoing. This is not gamesmanship. The idea of a criminal jury trial is not to get the upper hand by playing games.

{¶ 56} We find that the trial court did not abuse its discretion when it allowed the state to amend the indictment to include Stuckman's real name, Justin Harris, shortly before trial. The amendment did not add a prejudicial and unnecessary alias to the indictment but, rather, merely corrected an undisputed misnomer: the defendant was not indicted by his true name. It was incumbent upon Stuckman to raise this defect, which related to the sufficiency of the indictment, prior to trial under Crim.R. 12(C). *See State v. Jones*, 6th Dist. Lucas No. L-09-1181, 2009-Ohio-6498, ¶ 15. The trial court was well-within its discretion under Crim.R. 7 when it amended the indictment before trial to include the defendant's real name.

{¶ 57} Moreover, although this indictment also clarified that "Armis Stuckman" is an alias by including "aka" (i.e., "also known as") before it, the inclusion of this alias was not unnecessary surplusage: many witnesses testified that the defendant used the names

21.

"Armis Stuckman" and "Shadow" interchangeably with his real name. Thus, the identification of the defendant by his alias, "Armis Stuckman," in the indictment was permissible given that evidence of the defendant's use of this alias was relevant to the proper identification of the accused in relation to the crimes charged.

{¶ 58} For these reasons, we find Stuckman's third assignment of error not well-taken.

## IV. Conclusion

{¶ 59} The trial court did not abuse its discretion when it denied Stuckman's motion to sever case No.17CR236 from case No. 17CR331. Stuckman failed to provide the trial court with any specific information that would have enabled it to weigh the considerations favoring joinder against the defendant's right to a fair trial. Regardless, the state satisfied the joinder test given that the evidence related to the receiving-stolen-property charge of case No. 17CR236 was simple, direct, and capable of being separated from the evidence relating to the charges at issue in case No. 17CR331. Stuckman's first assignment of error is, therefore, not well-taken.

{¶ 60} Stuckman's attempted aggravated murder, aggravated robbery, and felonious assault convictions were supported by sufficient evidence where the state presented evidence that Stuckman committed these offenses on November 24, 2016, at Walsh Park when he slashed M.R.'s neck and grabbed M.R.'s wallet from the back pocket of his pants. Stuckman's second assignment of error is, therefore, not well-taken.

22.

**{¶ 61}** The trial court did not abuse its discretion when it granted the state's pretrial motion to amend the indictment to include the defendant's real name, Justin Harris, and alias, "Armis Stuckman." This amendment corrected a deficiency in the indictment and, also, added relevant information regarding the defendant's use of an alias. Stuckman's third assignment of error is, therefore, not well-taken.

**{¶ 62}** Accordingly, we affirm the September 11, 2017 judgment of the Sandusky County Court of Common Pleas. Stuckman is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____

Christine E. Mayle, P.J. _____
CONCUR.
JUDGE

_____
JUDGE