[Cite as *State v. Reed*, 2020-Ohio-138.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                      Court of Appeals Nos. E-18-017
                                                                              E-18-018
    Appellee

                                                   Trial Court Nos. 2015-CR-199
v.                                                                  2016-CR-224

Patrick Reed                                      **DECISION AND JUDGMENT**

    Appellant                              Decided:  January 17, 2020

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and Anthony A.
Battista III, Assistant Prosecuting Attorney, for appellee.

Derek A. Farmer, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This consolidated appeal is before the court following the March 13, 2018

judgments of the Erie County Court of Common Pleas which, following a jury trial

convicting appellant, Patrick Reed, of multiple counts involving drug trafficking,

sentenced him to a total of 27 years and 3 months of imprisonment. For the reasons that follow, we affirm, in part, and reverse, in part.

{¶ 2} On June 10, 2015, in case No. 2015-CR-199, appellant was indicted on two counts of trafficking in a counterfeit controlled substance, trafficking in heroin, possession of heroin, possession of cocaine, preparation of heroin for sale, preparation of cocaine for sale, having a weapon while under a disability, tampering with evidence, and failure to verify. Appellant was indicted in case No. 2016-CR-224 on June 9, 2016, and charged with complicity to commit trafficking in heroin, possession of heroin, preparation of heroin for sale, possession of cocaine, aggravated possession of drugs, and two counts of having a weapon while under a disability,

{¶ 3} Motions to suppress were filed in both cases. Appellant requested that the court suppress all evidence seized by the search warrant executed in each case. The probable cause supporting both warrants was based, in part, on controlled drug purchases by various confidential informants ("CI"). Appellant argued that the CIs which formed the basis for the first probable cause affidavit lacked reliability, that the police used the CIs to "lure" appellant into criminal activity, and that there was no showing of necessity to justify a night search. Appellant concluded that no "good-faith exception" to the exclusionary rule applied. As to the second affidavit and warrant, appellant argued that much of the information was "stale" and could not support a finding of probable cause. Appellant again argued that the CIs' reliability and veracity had not been tested. A

2.

hearing on the motion filed in case No. 2015-CR-199 was held on February 11, 2016; the court denied the motion. A hearing on the motion to suppress filed in case No. 2016-CR-224 was held on October 31 and December 15, 2016. Again, the court denied the motion.

{¶ 4} On August 3, 2016, the state filed a motion to join the cases for trial. Appellant opposed the motion and renewed his objection at trial. The cases were ultimately joined for trial.[1]

{¶ 5} The trial in this matter commenced on January 23, 2018. The state presented the testimony of several officers regarding multiple controlled drug purchases involving appellant. Officers testified about the general protocol in conducting controlled drug buys. This included making sure the CI was not intoxicated and making sure the CI did not have any drugs, money, or contraband on their person or in their vehicle if it would be used to facilitate the transaction. The transaction was recorded by a device worn by the CI and the money used was photographed. Following the buy, the CI was again searched.

{¶ 6} Sandusky Police Department Officer Adam West provided much of the testimony regarding the first three controlled drug purchases. The first controlled buy took place on October 14, 2014, and involved CI-1. CI-1 called appellant and arranged a heroin purchase. They met in front of appellant's home on Townsend Street in Sandusky,

---

[1] The state's motion to sever Count 10 of the indictment in case No. 2015-CR-199, failure to verify sexual offender status, was granted.

3.

Ohio. The material purchased was tested and no controlled substance was detected. An audio recording of the transaction was played for the jury.

{¶ 7} A second controlled drug purchase involving CI-1 was completed on November 3, 2014. Sandusky Police Detective Jonathon Huffman testified that they met and searched CI-1, set up the digital recorder, and provided him with the photocopied buy money. The CI then walked to appellant's home on Townsend Street. Officer Huffman stated that CI-1 met appellant on the sidewalk in front of the residence; money and purported drugs were exchanged. Ultimately, the substance recovered was determined not to be a controlled substance. Detective Huffman also testified as to the weapons seized pursuant to the search warrants and their operability.

{¶ 8} Officer West testified that CI-2, who was cooperating with police in lieu of a criminal charge, indicated that appellant was an individual from whom she had purchased drugs. On December 8, 2014, CI-2 telephoned an individual she called "Bunny" to arrange a heroin purchase. A recording of the call was played for the jury. CI-2 then drove her vehicle to appellant's residence on Townsend, entered the residence, returned to her vehicle and drove to meet officers. The substance CI-2 purchased was tested and found to contain .11 grams of heroin. A recording of the transaction was played for the jury.

{¶ 9} Based on these transactions, police applied for and were granted a search warrant which was executed on December 11, 2014, and included appellant's person and his residence on Townsend Street. Prior to entering the home, police conducted

4.

surveillance and observed several cars parked nearby. Individuals would exit a vehicle, enter the targeted location, and leave within one to two minutes.

{¶ 10} Officers then knocked and announced the search warrant; upon observing individuals trying to leave through the back of the residence, they used a battering ram to breach the door. Appellant was observed running toward the rear of the house; he threw plastic bags containing unknown substances and money under the dining room table. Multiple cell phones and a digital scale were recovered from the house. Appellant's social security card and a rifle were recovered from underneath a bed; in the same room men's clothing, personal photographs, money, and paperwork with appellant's name were found. The recovered substances were tested and were identified as heroin and cocaine.

{¶ 11} Sandusky Police Officer Michael Schock testified that during the execution of the warrant he searched the bedroom on the south side of the residence. He discovered a rifle under the bed. Appellant informed the officer that the rifle was a British sniper rifle. Photographs of the seized items were admitted into evidence.

{¶ 12} The second round of controlled drug buys commenced in 2016. The March 8, 2016 controlled buy involved the Perkins Police Department. Officer Joe Rotuno testified that CI-5 was cooperating with the controlled buy in order to avoid prosecution on a drug possession charge. CI-5 had been used previously in controlled drug transactions. CI-5 indicated that she could purchase drugs through another female who would get the drugs from "Bunny."

5.

{¶ 13} After the proper protocols and procedures, CI-5 was followed in her vehicle to pick up the female and they drove to appellant's new address on Larchmont Drive in Sandusky, Ohio. The female went into the residence, left the residence and got back into CI-5's vehicle. Detective Rotuno stated that they approached the vehicle at a drive-through carry-out; the female was found with drugs in her crotch area. They were tested and determined to be .76 grams of heroin. The digital recording of the transaction was played for the jury.

{¶ 14} Detective Rotuno then testified regarding the execution of the search warrant at the Larchmont address on March 15, 2016. Rotuno stated that on that date they were conducting surveillance in aid of another agency's controlled buy at the Larchmont address. Following the transaction, multiple officers entered and cleared the residence. During the initial search officers found a receipt for a nearby motel; they proceeded to the motel to see if they could locate appellant. The motel clerk confirmed that appellant was staying at the motel. Eventually, appellant exited the room and he was placed under arrest based upon the discovery of at least one firearm at his residence. Three cell phones and cash were found on appellant.

{¶ 15} Detective Ron Brotherton, a narcotics detective with the Sandusky Police Department, testified regarding the March 8, 2016 controlled drug buy involving appellant. Brotherton stated that he was contacted by Officer Rotuno to assist with surveillance. Following the transaction, Officer Brotherton stated that he participated in

6.

the "buy bust" involving CI-5 and the middleman who had placed the narcotics down the front of her pants.

{¶ 16} Officer Brotherton testified that he was the affiant on the search warrant that was issued and executed on March 15, 2016. On that date, prior to the search, CI-5 purchased drugs from appellant outside of his residence on Larchmont; the CI-5 indicated that appellant then returned to the residence. Brotherton stated that two individuals in a green Ford Ranger were seen leaving the residence.

{¶ 17} Similar to Officer Rotuno's testimony, Officer Brotherton stated that they then executed the search warrant by a knock-and-announce at the back door. Appellant's mother was in the residence. Brotherton stated that they quickly discovered a hotel receipt; officers proceeded to the hotel in an attempt to locate appellant since his person was included in the search warrant. Appellant was located and transported back to the residence so he could be present for the remainder of the search. Two firearms were found in a bedroom. Appellant's juvenile son, who also resided in the residence, came home during the search.

{¶ 18} Officer Brotherton identified several photographs taken during the search which included photographs of two firearms and ammunition, a digital scale, clothing that was appellant's size, mail addressed to appellant, multiple cell phones, and nearly $4,000 cash all located in the southeast bedroom. An additional digital scale was found in the kitchen. A coffee mug containing suspected narcotics was found in the roof gutter; police were tipped that appellant hid drugs in that location.

7.

{¶ 19} Officer Brotherton testified that none of the money found was marked buy money. He stated that drug traffickers know that the money is marked and will try and use or exchange it was quickly as possible. Officer Brotherton further testified that appellant was released from the Erie County Jail and rearrested two days later at the Larchmont address.

{¶ 20} Appellant cross-examined the officers involved in the controlled buys and execution of the search warrants. Officer Adam West admitted that he did not know who, in addition to appellant, lived at the home on Townsend. He stated that he had never been in the home prior to the execution of the search warrant and did not know which bedroom was appellant's. Officer West clarified that he concluded the room was appellant's because men's clothing was found with his identification in it. West was questioned about testimony in the prior suppression hearing which conflicted with his trial testimony. Officer West agreed that he previously stated that he did not observe a hand-to-hand transaction between appellant and CI-1. West admitted that a confidential informant could hide drugs and/or money on their person and fabricate evidence. West also admitted that he was not present when CI-1 purportedly called appellant to arrange the drug transaction. As to CI-2, Officer West was questioned as to the thoroughness of the search of her person and vehicle.

{¶ 21} Officer Rotuno was questioned about the execution of the search warrant; he admitted he had never been inside the Larchmont location and did not personally

8.

know who owned the house. Rotuno also admitted that he had never seen appellant sell drugs to anyone.

{¶ 22} Officer Rotuno was also questioned about the March 8, 2016 controlled drug buy involving CI-5. Rotuno admitted that he did not have continuous visual surveillance of either the CI or the female go-between who actually purchased the drugs.

{¶ 23} Officer Ron Brotherton admitted that there was no scientific evidence to confirm that appellant had physically handled any of the items seized during the March 15, 2016 execution of the search warrant. Brotherton also admitted that he did not know who slept in the southeast bedroom the night before the search.

{¶ 24} Sandusky Police Officer Lucas Rospert testified regarding the body camera video he wore during the execution of the March 15, 2016 search warrant. The video was played for the jury. Officer Rospert admitted that when police entered the back door they did not see what was occurring in the front of the house.

{¶ 25} CI-2 testified that in 2014, she frequently purchased drugs from appellant, known by the nickname "Bunny." She stated that in December 2014, she was working with police in order to avoid a possession of drugs charge. On December 8, 2014, she contacted appellant to arrange a drug purchase; she drove her vehicle to the Townsend Street address, parked and entered the home. Inside, there was a child under the age of five. CI-2 stated that she gave appellant the money and he gave her the drugs. She then drove in her vehicle to meet the detectives.

9.

{¶ 26} During cross-examination, CI-2 admitted that at the time of the controlled buy she was addicted to heroin. She would lie, steal and prostitute herself in order to obtain heroin. She also admitted that she would have done just about anything to stay out of jail and keep using heroin and that she had used heroin on the date of the controlled buy.

{¶ 27} CI-4 testified that she had known appellant, nicknamed Bunny, since 2007, and had purchased drugs from him prior to her imprisonment in 2009. In March 2016, she began working with police because she had "charges" and had a vendetta against drug-supplier Candace Wilson. On March 8, 2016, CI-4 met with police to set up the buy and then drove to pick up Wilson. Wilson directed her to a drop off point; she then exited the vehicle and began walking. According to CI-4, Wilson was concerned that she was being followed. When she returned to the vehicle she had heroin for the CI. On the way back to Wilson's apartment, Wilson had the CI stop at a drive-thru. Police intercepted them and retrieved the drugs from Wilson's pants. During cross-examination, CI-4 admitted that Wilson had not been searched for drugs.

{¶ 28} Bureau of Criminal Investigation ("BCI") forensic scientist Samuel Fortener initially acknowledged that he was disciplined by the BCI for failing to follow the proper testing procedures. Fortener agreed that none of the potentially affected samples were related to appellant's case and that he regained the full confidence of the BCI.

10.

{¶ 29} Fortener testified that he received a sample of a substance recovered from the December 8, 2014 controlled buy. The results were that it was not a controlled substance. Fortener also tested substances found in bags during the execution of the December 11, 2014 search warrant at appellant's residence on Townsend. One of the bags tested positive for 4.29 grams of heroin, and one for 16.70 grams of cocaine.

{¶ 30} As to the 2016 test results stemming from controlled buys and the execution of the second search warrant, Fortener testified that the substances were tested by another scientist and that he retested them so he could provide testimony in court. The substance was determined to be .76 grams of heroin. Several substances were recovered following the execution of the search warrant. Those tested came back as a digital scale with heroin residue, a digital scale with traces of heroin and THC, four baggies containing amounts of heroin ranging from 27.07 grams to .13 grams, and one baggie with less than .1 grams of cocaine. Fentanyl was also found in one of the heroin samples. The original BCI tester, Sara Tipton, also testified as to the results.

{¶ 31} Larry Rentz, also from the BCI, testified that he analyzed a sample collected on October 20, 2014, and that no controlled substance was found. Rentz also analyzed a sample collected on November 3, 2014, which also contained no controlled substance.

{¶ 32} Sandusky Police Evidence Officer Matthew Dunn testified that he documents the chain of custody of all the evidence that comes through the department.

Each piece is issued a bar code or a tag number. The evidence room is locked with limited access.

{¶ 33} Appellant stipulated to the prior felony convictions rendering him unable to possess a firearm. The state then rested. Appellant made a Crim.R. 29 motion for acquittal which was denied.

{¶ 34} Appellant presented the testimony of Sandusky Police Chief John Orzech who explained the department's confidential informant policy. The written policy, seven to nine pages long, included sections on what informants are prohibited from doing while working with police. Chief Orzech agreed that the policy prohibits informants from violating any laws while assisting police; this would include the use of narcotics. Orzech stated that an officer would have to have knowledge of the usage to terminate the informant relationship. Chief Orzech agreed that informants were not to be on probation or parole.

{¶ 35} Monique W. testified that on March 15, 2016, she resided at the residence on Larchmont Drive which was the subject of the search. Monique stated that she lived there with appellant's mother, his sister and her children, and Detaureis Reed. Monique stated that appellant "came through" but that he did not live there. Monique also testified that the Glock and Ruger handguns recovered during the search were hers and that she had a concealed carry permit. Monique testified to a trial exhibit depicting her cell phone's "notes" application in which she had created a note, predating the March 2016 search, with the make and serial number of the handguns.

12.

{¶ 36} During cross-examination, Monique admitted that she never contacted police to ask about her guns. She further admitted that when contacted by police as a potential trial witness she never inquired about the guns. Monique stated that she did not leave the guns the way they were found; unsecured, fully loaded, and under a bed. Monique then backtracked and said that she did store them that way but that it was safe because there were no children in the room.

{¶ 37} Monique testified that she had previously lived at the Townsend Street address with many of the same individuals. She agreed that appellant stayed there many times.

{¶ 38} Following deliberations, the jury found appellant guilty on all counts tried in both cases. Appellant was sentenced on March 13, 2018, and this appeal followed.

{¶ 39} Appellant now presents five assignments of error for our consideration:

Assignment of Error No. I: The trial court erred in not suppressing the results of the searches of the residence and person of Mr. Reed in Case No. 15-CR-199, as the evidence from these searches was obtained in violation of Art. I, Sec. 14 of the Ohio Constitution, the Fourth Amendment to the United States Constitution and Crim.R. 41(C)(1).

Assignment of Error No. II: The trial court erred in not suppressing the results of the searches of Larchmont Drive and person of Mr. Reed in Case No. 16-CR-224, as the evidence from these searches was obtained in

violation of Art. I, Sec. 14 of the Ohio Constitution, the Fourth Amendment to the United States Constitution and Crim.R. 41(C)(1).

Assignment of Error No. III:  Mr. Reed's rights under the Sixth Amendment and Art. I, Sec. 10 of the Ohio Constitution were violated by the admission at trial of incriminating out-of-court statements made by non-testifying confidential informants and sources.

Assignment of Error No. IV:  Mr. Reed's convictions are supported by insufficient evidence and are against the manifest weight of the evidence in violation of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. 10 of the Ohio Constitution.

Assignment of Error No. V:  The trial court violated the Fourteenth Amendment to the United States Constitution, Art. I, Sec. 10 of the Ohio Constitution and Ohio Criminal Rules 8 & 14 by joining counts from two cases for trial and in denying Appellant's motion to sever.

**Motions to Suppress**

{¶ 40} Appellant's first and second assignments of error challenge the trial court's rulings on his motions to suppress the evidence obtained by the two search warrants which formed the basis of the criminal charges in each case.  Initially we note that an appellate court's review of a ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of

14.

fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 41} It is well-established that a determination of whether a sufficient basis exists to find probable cause for the issuance of a search warrant requires consideration of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under the totality-of-the-circumstances test,

> "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. *Jones v. United States*, 362 U.S. at 271[, 80 S.Ct. 725, 4 L.Ed.2d 697].* * *."

*State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989), quoting *Illinois v. Gates* at 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527.

15.

{¶ 42} When a search warrant is issued, the determination by the issuing judge or magistrate that there was probable cause for the search is not subject to de novo review by appellate courts. *George* at paragraph two of the syllabus, following *Illinois v. Gates*, 462 U.S. at 236. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* "Even when a magistrate's determination of probable cause may be doubtful or marginal, the appellate courts should still give it 'great deference.' [*State v. George* at 330, 544 N.E.2d 640.]" *State v. Williams*, 173 Ohio App.3d 119, 2007-Ohio-4472, 877 N.E.2d 717, ¶ 13 (6th Dist.).

### Case No. 2015-CR-199

{¶ 43} The affidavit for the search warrant in this case involved three controlled drug purchases by two confidential informants. The warrant included searches of appellant's person and his residence on Townsend Street in Sandusky, Ohio. In his brief, appellant argues that the affidavit executed to secure the search warrant was based on controlled drug purchases made by unreliable informants who were not monitored and failed to produce any confirmed controlled substances. Appellant further contends that the informants' bases of knowledge was not disclosed.

{¶ 44} As to CI-1, appellant argues that there was no information as to how, when, and where the alleged drug purchase had been arranged. Appellant argues that as to CI-1, the affidavit failed to indicate that the affiant officer actually observed the transactions, that CI-1 was searched for the buy money following the alleged transactions, or that the

16.

transactions had any nexus, other than proximity, between the house included in the search warrant and alleged transactions.

{¶ 45} As to CI-2, appellant argues that CI-2 had not been tested and was unreliable, the basis for his knowledge that appellant was selling heroin was not disclosed, there was no proof that the call made by CI-2 to arrange a drug buy was with appellant, and there was no proof that appellant was actually in the residence when the alleged transaction occurred.

**Case No. 2016-CR-224**

{¶ 46} In this case, the affidavit securing the search warrant referenced the above three controlled drug purchases and included seven additional purchases in February-March 2016, and involved three additional confidential informants. The places to be searched included appellant and his residence on Larchmont Drive in Sandusky, Ohio. Appellant first argued that the 2014 information was "stale." Appellant similarly argued that CI-3 had not been tested and that the affiant had no personal knowledge that appellant was the other party to the phone call arranging the drug purchase. Finally, appellant argues that the affiant never stated that he observed CI-3 enter the residence on Neil Street, only that he left the residence.

{¶ 47} Appellant next raised arguments relating to CI-4; specifically, there was no firsthand information that CI-4 could buy drugs from the female go-between who sold drugs for appellant. The purported deal happened on two occasions and each involved CI-4 transporting the female in her vehicle. Finally, as to CI-5 appellant argues that the

17.

affidavit does not state the basis for her knowledge that appellant had heroin she could purchase.

{¶ 48} Appellant argues that even as described, the facts in the affidavits did not give rise to probable cause, but instead only supported a "hunch" that drug deals may have been occurring. Appellant relies on a case from this district where we concluded that a search warrant based upon a confidential informant's statement that a defendant would be leaving the house with drugs, without any indication of the source of the statement, was not sufficient to support a probable cause finding. *State v. Young*, 6th Dist. Erie No. E-13-011, 2015-Ohio-398, ¶ 48. Appellant asserts that the basis of knowledge of the CIs was undisclosed and that the only tested substance was non-controlled.

{¶ 49} Reviewing *Young*, we find that the facts of this case are distinguishable. Here, the affidavits were not based on the mere statement that appellant was selling drugs. Controlled buys and surveillance were conducted in both cases. Further, the affidavits in both cases were issued shortly following a controlled buy, thereby increasing the likelihood that drugs or evidence of drug trafficking would be found at the homes. *See State v. Turner*, 8th Dist. Cuyahoga No. 92966, 2010-Ohio-1205, ¶ 19.

{¶ 50} Mindful of our deferential standard of review, we find that the judge issuing the search warrants in this case had a substantial basis for concluding that probable cause existed supporting the search warrants. Appellant's first and second assignments of error are not well-taken.

18.

**Right to Confrontation**

{¶ 51} In appellant's third assignment of error he argues that the trial court erred by allowing the admission of incriminating out-of-court statements made by non-testifying confidential informants. Specifically, appellant contends that three informants involved in the case did not testify at trial yet their statements were elicited through police testimony.

{¶ 52} The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court of the United States held that "[w]here testimonial evidence is at issue, * * * the Sixth Amendment demands what the common law required: unavailability [of the declarant] and a prior opportunity for cross-examination." *Id.* at 68.

{¶ 53} Following *Crawford*, the Supreme Court of Ohio has held that "[f]or Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph one of the syllabus.

{¶ 54} First, appellant contends that CI-1's statements to police surrounding the controlled drug buys were impermissibly elicited through the testimony of Officers West and Huffman. We note that CI-1 was subpoenaed to testify at trial on multiple occasions due to several trial continuances. On January 31, 2018, a material witness warrant was

19.

issued due to the inability to locate CI-1. The warrant ordered that he be kept in custody though his tenure as a witness. CI-1 was not located prior to trial and was unavailable. *See* Evid.R. 804(A)(2).

{¶ 55} Further, drug buy tapes that are played for the jury are generally not considered hearsay as they are used to provide context as to the activity taking place. *State v. Cunningham*, 6th Dist. Wood No. WD-08-063, 2009-Ohio-6970, ¶ 19, citing *State v. Aldrich*, 12th Dist. Madison No. CA2006-10-044, 2008-Ohio-1362, ¶ 9. Thus, any Confrontation Clause claims stemming from the playing of the recordings is unavailing.

{¶ 56} As to Candace Wilson, who was the go-between with CI-4 and appellant, appellant argues that her statements, elicited through the testimony of CI-4 and Officer Rotuno, that she got her heroin from appellant was the only testimony directly implicating appellant in the sales in which she was involved. Officer Brotherton also testified regarding his arrest and debriefing of Wilson where, when asked, she informed him that appellant had sold her the drugs. This testimony was objected to and the objection was sustained.

{¶ 57} The state asserts that any such statements by Wilson were statements of a party-opponent and not hearsay because she was indicted for her participation in the March 3 and March 8, 2016 drug purchases. *See* Evid.R. 804(B)(3).

{¶ 58} As to statements made by Wilson to CI-4, the statements fit within the party-opponent exception in that Wilson was indicted on charges. CI-4 testified at trial

20.

and was subject to cross-examination. Further, police surveilled the transactions and found drugs hidden on Wilson's person. In addition, police were able to listen to a telephone conversation between CI-4, appellant and Wilson and made by Wilson while she was in appellant's house.

{¶ 59} Finally, appellant contends that he was prejudiced by the improper admission of testimony regarding a tip from an anonymous informant that he concealed drugs in a "green bean can" or in the garage or the roof of the garage. Officer Brotherton testified that based on this information they accessed the roof where heroin, cocaine, and fentanyl were found in a coffee mug. Following appellant's counsel's objection, the court instructed the jury that the testimony was to be considered only to explain what the officer did during the investigation. Presuming that the jury followed the court's instructions, we find no error.

{¶ 60} Based on the foregoing, we find that the appellant's right to confront witnesses testifying against him was not violated. Appellant's third assignment of error is not well-taken.

**Sufficiency and Manifest Weight**

{¶ 61} Appellant's fourth assignment of error argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is purely a question of adequacy where a

21.

court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 62} Conversely, a claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *Thompkins* at 387. An appellate court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 63} Appellant was convicted of multiple counts including drug trafficking, drug possession, having weapons while under disability, and tampering with evidence. As to trafficking in a controlled counterfeit substance, appellant argues that there was no

22.

sufficient evidence at trial demonstrating that appellant knew that the substances involved in the controlled buys to CI-1 were counterfeit.

{¶ 64} Trafficking in counterfeit controlled substances, in violation of R.C. 2925.37(B), states that "[n]o person shall knowingly make, sell, offer to sell, or deliver any substance that person knows is a counterfeit controlled substance." Thus, the statute requires that appellant actually knew that the substances he sold to CI-1 were counterfeit. *See State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 52-54; *State v. Kimbrough*, 4th Dist. Washington No. 08CA18, 2008-Ohio-6690, ¶ 6-10; *State v. Garrett*, 149 Ohio App.3d 142, 2002-Ohio-4356, 776 N.E.2d 520, ¶ 22-29 (11th Dist.). Such knowledge may be established by an admission of the defendant or circumstantial evidence including the fact that the defendant packaged the drugs himself. *Hurley* at ¶ 53.

{¶ 65} In the present case we must conclude that the state failed to prove that appellant knew that the packages of drugs he sold CI-1 were counterfeit. There is no evidence that he admitted knowledge or that he packaged the drugs. Thus, we find that that evidence is not sufficient to support the convictions for trafficking in a controlled counterfeit substance.

{¶ 66} As to drug trafficking, preparation, and possession, the statutes required that the state prove that appellant sold a controlled substance for money. The evidence presented at trial demonstrated that appellant lived at both the Townsend and Larchmont residences during the relevant times and that digital scales were found in his bedroom as

well as various narcotics, cell phones, cash, and weapons. During the execution of the Townsend search warrant, appellant threw baggies with narcotics under the dining room table (tampering with evidence.) Further, there is sufficient evidence to demonstrate that appellant sold the CI drugs in the presence of a juvenile. There is also sufficient evidence that appellant constructively possessed the narcotics found in a cup on the roof of the garage.

{¶ 67} In order to constructively possess contraband, exclusive access to the item need not be established. *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 25 (4th Dist.). "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The state must also show that the defendant was conscious of the object's presence. *Id.*, citing *Hankerson* at 91. Both dominion and control, and whether a person was conscious of the object's presence may be established through circumstantial evidence. *Id.*, citing *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19.

{¶ 68} As to consciousness of the presence of the narcotics, Officer Brotherton stated that appellant's demeanor markedly changed from "cocky and confident" to concern when he realized that a fire ladder was called and police were going to look on the roof of the garage. Further, the search warrant at Larchmont was executed while appellant was under indictment on charges following the execution of the Townsend

24.

search warrant and was based on several additional controlled drug buys, thus evidencing appellant's ongoing drug trafficking operation.

{¶ 69} The weapons while under a disability charges were based on the recovery of an antique rifle on Townsend and two handguns on Larchmont. There was sufficient evidence to demonstrate that the weapons were appellant's based on statements by appellant and where the guns were located and the convictions were not against the weight of the evidence even considering the testimony of Monique W. that the handguns were hers.

{¶ 70} Based on the foregoing, we find that appellant's fourth assignment of error is well-taken, in part. Appellant's convictions for trafficking in a controlled counterfeit substance are vacated.

### Joinder

{¶ 71} In appellant's fifth and final assignment of error, he argues that joinder of all the counts for trial was error as they were not sufficiently related in time, substances, location, or confidential informants. The state counters that appellant failed to demonstrate the prejudicial effect of joinder.

{¶ 72} Under Crim.R. 13, a court may order two or more cases to be tried together "if the offenses * * * could have been joined in a single indictment * * *." Joinder of two or more separate offenses in an indictment, information or complaint is proper "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or

transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). Joinder is generally favored as it preserves judicial economy and public funds, avoids multiple trials and inconvenience to witnesses, and allows for prompt and consistent trial results. *State v. Scott*, 6th Dist. Sandusky No. S-02-026, 2003-Ohio-2797, ¶ 13, quoting *State v. Dunkins*, 10 Ohio App.3d 72, 460 N.E.2d 688 (9th Dist.1983), paragraph one of the syllabus.

{¶ 73} If a party opposing the joinder of indictments demonstrates prejudice, the trial court shall order separation of the counts under Crim.R. 14. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 20-21, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus.

{¶ 74} In order to affirmatively show that his rights have been prejudiced by the joinder, the defendant must furnish the trial court with information sufficient to allow the court to weigh the considerations favoring joinder against the defendant's right to a fair trial; to obtain reversal on appeal, the defendant must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial. *State v. Goodner*, 195 Ohio App.3d 636, 2011-Ohio-5018, 961 N.E.2d 254, ¶ 42 (2d Dist.). Accordingly, we review a trial court's decision on severance under an abuse of discretion standard. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶ 75} Appellant urges the court to follow the First Appellate District which found that in the case of six separate robberies involving the same defendant, at least some of the counts should have been severed for trial. *State v. Echols*, 128 Ohio App.3d 677, 716

N.E.2d 728 (1st Dist.1998). In *Echols* the state argued that joinder was not prejudicial because evidence of each robbery was admissible to show a modus operandi or behavioral fingerprint. *Id.* at 692.

{¶ 76} Reversing the joinder of the offenses, the court concluded that they did not share "significant common features." *Id.* at 693. Specifically, the court found that the robbery, although occurring in the same general location and involving a knife, varied as to whether the suspect attempted to conceal his face, whether he threatened the victim, and whether he cased the location or it appeared random. *Id.* at 693-694. The court also concluded that the counts were not "simple and distinct" such as to prevent jury confusion. *Id.* at 694.

{¶ 77} Reviewing the arguments of the parties, we find that appellant has failed to affirmatively demonstrate prejudice stemming from the joinder of the cases. Each case was based on the execution of a separate search warrant at a separate residence. The charges involved various confidential informants and law enforcement and the testimony at trial was segregated as to the multiple controlled purchases and searches. Further, the charges were all based on a course of criminal conduct, drug trafficking, engaged in by appellant. Accordingly, we find that the trial court did not abuse its discretion when it allowed the cases to be joined for trial. Appellant's fifth assignment of error is not well-taken.

{¶ 78} On consideration whereof, we find that the judgments of the Erie County Court of Common Pleas are affirmed, in part, and reversed, in part. We reverse and

vacate appellant's convictions for trafficking in a counterfeit controlled substance as they were not supported by sufficient evidence. We affirm the remainder of appellant's convictions. The matter is remanded for proceedings consistent with this decision. The parties are ordered to share equally in the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.