[Cite as *State v. Goodner*, 195 Ohio App.3d 636, 2011-Ohio-5018.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

THE STATE OF OHIO,                          :

    Appellee,                               :          C.A. CASE NO.    24320

v.                                          :          T.C. NO.    10CR527

GOODNER,                                    :          (Criminal appeal from
                                               Common Pleas Court)

    Appellant.                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___30th___ day of <u>September</u>, 2011.

. . . . . . . . . .

Mathias Heck Jr., Montgomery County Prosecuting Attorney, and Laura M. Woodruff, Assistant Prosecuting Attorney, for appellee.

Antony A. Abboud, for appellant.

. . . . . . . . . .

DONOVAN, Judge.

{¶ 1} Defendant-appellant, Kelly D. Goodner, appeals from his conviction and sentence for five counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), all felonies of the first degree.

I

{¶ 2} On February 20, 2010, Goodner was stopped by Dayton Police Officers Dustin Phillips and Nathan Spellman while he was walking near the intersection of Harvard Boulevard and Richmond Avenue in the Five Oaks

neighborhood at approximately 11:30 p.m. Goodner matched the description of a suspect in a robbery that Officer Spellman had investigated some days prior involving a short, black male wearing a red jacket with a yellow design and a black mask that covered only the bottom half of his face.

{¶ 3} Upon observing an individual who fit that description, Officer Phillips pulled over and shined his cruiser's spotlight on Goodner and ordered him to stop. The officers exited the cruiser and approached Goodner. Officer Phillips asked Goodner whether he had any weapons. Goodner stated that he had a BB gun and indicated that it was located in his waistband under his jacket. Officer Phillips retrieved the BB gun from Goodner's waistband, noting that it matched the description of a weapon used in a recent armed robbery in the area.

{¶ 4} Officer Phillips then placed Goodner in the rear of the cruiser and transported him to the Safety Building where he was interviewed by Detective Mark Bilinski. Detective Bilinski was investigating a string of five robberies in which the perpetrator was a described as a short, black male wearing a black half-mask. Three of the robberies were committed with a weapon, perceived by the victims to be a handgun. The remaining two robberies were committed with a knife and a baseball bat. Once at the Safety Building, Officer Phillips directed Goodner to remove his jacket. Officer Phillips searched the jacket and discovered a black neoprene half-mask in the right-side pocket.

{¶ 5} After Goodner was questioned, Detective Bilinski and Detective William Elzholz created photo spreads, each containing a photo of Goodner, and showed them to witnesses from the robberies that Goodner was suspected of having committed. Each witness was able to positively identify Goodner from

photo spreads. Specifically, Goodner was implicated in the following robberies:

{¶ 6} January 19, 2010: On this date, the United Dairy Farmers located at 3905 North Main Street was robbed by a short, thin, black male wearing a black neoprene mask and wielding a knife. The victim, Jameela Johnson, identified Goodner as the perpetrator from a photo spread.

{¶ 7} January 29, 2010: On this date, the Lee's Famous Recipe restaurant located at 4140 North Main Street was robbed by a light-skinned black male wearing a black neoprene mask and wielding an aluminum baseball bat. An employee from the restaurant, Leonard Taylor, identified Goodner as the perpetrator from a photo spread.

{¶ 8} February 10, 2010: On this date, Dante Hobson, a Domino's Pizza delivery driver, was robbed at 53 Victor Avenue by a short, black male wearing a black mask, brandishing what appeared to be a large semi-automatic handgun with an attached scope. Hobson later positively identified Goodner as the perpetrator from a photo spread.

{¶ 9} February 15, 2010: On this date, Shawn Ostrander, a Donato's Pizza delivery driver, was robbed at 103 Marathon Avenue by a black male wearing a red jacket with yellow lines and a black mask, brandishing a large semi-automatic handgun that he pulled out of his waistband. Ostrander identified Goodner as the perpetrator from a photo spread.

{¶ 10} February 16, 2010: On this date, an employee at the Main Drive Thru in Dayton, Ohio, was robbed by a short, light-skinned black male wearing a black mask, brandishing a large semi-automatic handgun. Waylan identified Goodner as the perpetrator in two photo spreads prepared by Detective Elzholz.

{¶ 11} Goodner was indicted for five counts of aggravated robbery (deadly weapon) on March 17, 2010. At his arraignment on March 23, 2010, Goodner stood mute, and the trial court entered a plea of not guilty on his behalf. Goodner filed a motion to sever and a motion to suppress on April 8, 2010. On April 30, 2010, a hearing was held on Goodner's motion to suppress. The trial court issued a written decision overruling Goodner's motion to suppress on May 3, 2010. On July 21, 2010, the trial court issued a written decision overruling Goodner's motion to sever. Goodner subsequently pleaded no contest to five counts of aggravated robbery (deadly weapon), and the trial court sentenced him to four years' imprisonment on each count, the sentences to run consecutively, for an aggregate sentence of 20 years.

{¶ 12} It is from this judgment that Goodner now appeals.

II

{¶ 13} Because they are interrelated, Goodner's first and fourth assignments of error will be discussed together as follows:

{¶ 14} "Mr. Goodner was deprived of the effective assistance of counsel."

{¶ 15} "The trial court erred in accepting the defendant's no-contest plea."

{¶ 16} In his first assignment, Goodner contends that defense counsel was ineffective for failing to advise him regarding the evidence necessary to prove whether a BB gun is a deadly weapon. Goodner asserts that had he been made aware of this information by his attorney, he would have elected to have a jury trial on those counts wherein he was accused of using a handgun. In his fourth assignment, Goodner argues that his no-contest pleas were less than knowing and

voluntary because the trial court failed to substantially comply with Crim.R. 11(C)(2). Specifically, Goodner reiterates his assertion that his attorney failed to inform him prior to entering his pleas that whether a BB gun is a deadly weapon is an issue of fact to be decided at trial.

{¶ 17} We evaluate ineffective-assistance-of-counsel arguments in light of the two-pronged analysis set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. at 688. To reverse a conviction based on ineffective assistance of counsel, the defendant must demonstrate that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. at 687. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id. at 689.

{¶ 18} In evaluating claims by defendants that counsel's misinformation led to their plea, courts have said that counsel's erroneous advice about the consequences of the plea does not rise to the level of ineffectiveness. *State v. Xie* (1992), 62 Ohio St.3d 521; *State v. Arvanitis* (1986), 36 Ohio App.3d 213; *State v. Herrington* (Feb. 21, 1995), Clermont App. No. CA94-07-060. A properly licensed attorney in the state of Ohio is presumed competent. *State v. Smith* (1985), 17 Ohio St.3d 98; *State v. Jackson* (1980), 64 Ohio St.2d 107.

{¶ 19} Initially, we note that Ohio Rules of Criminal Procedure provide that a "plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment[.]" Crim.R. 11(B). Where the indictment, information, or complaint contains sufficient allegations to state a felony offense and the defendant pleads no contest, the court must find the defendant guilty. *State v. Bird* (1998), 81 Ohio St.3d 582, 584. Accordingly, "by pleading no contest to the indictment, [the] appellant is foreclosed from challenging the factual merits of the underlying charge." Id.

{¶ 20} Goodner pleaded no contest to five counts of aggravated robbery (deadly weapon), in violation of R.C. 2911.01(A)(1), all felonies of the first degree. R.C. 2911.01(A)(1) provides, "No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 21} Counts I and II in Goodner's indictment specifically state that the deadly weapons used were a knife and a baseball bat, respectively. Although Counts III, IV, and V contain the deadly-weapon element set forth in R.C. 2911.01(A)(1), these counts are silent regarding the type of deadly weapon used in each of the robberies.

{¶ 22} Goodner notes that for a BB gun to be considered a "deadly weapon," there must be evidence adduced concerning its capability for inflicting death. *State*

*v. Brown*, 101 Ohio App.3d 784. Goodner asserts that had his counsel informed him of this principle of law, he would have requested a trial on counts III, IV, and V, rather than pleading no contest to those charges. However, by entering no contest pleas to the all the counts, Goodner admitted the truth of the allegations stated in the indictment. *Bird*, 81 Ohio St.3d at 585. Simply put, by pleading no-contest, Goodner admitted that a deadly weapon was used in each of the aggravated robberies set forth in the indictment. As a result, the record before us contains no facts to support his assertion that defense counsel was ineffective. Significantly, although Goodner was apprehended on February 20, 2010, with a BB gun, each victim in Counts III, IV, and V asserted that Goodner displayed a handgun during the course of the crimes that had occurred on earlier dates.

{¶ 23} Accordingly, Goodner has failed to meet his burden to establish that defense counsel was ineffective.

{¶ 24} In his fourth assignment, Goodner reasserts that his counsel was ineffective for failing to properly advise him regarding the evidence necessary to prove whether a BB gun is a deadly weapon. As a result, Goodner contends that he did not enter his no-contest pleas in a knowing, voluntary, and intelligent fashion, and the trial court erred by accepting his pleas.

{¶ 25} In order to be constitutionally valid and comport with due process, a no-contest plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Compliance with Crim.R. 11(C)(2) in accepting guilty or no-contest pleas portrays those qualities.

{¶ 26} In *State v. McGrady*, Greene App. No. 2009CA60, 2010-Ohio-3243,

at ¶11-13, this court stated:

{¶ 27} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C). If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and is void. *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274.

{¶ 28} "A defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. *State v. Stewart* (1977), 51 Ohio St.2d 86, 93; Crim.R. 52(A). The test is whether the plea would have been otherwise made. [*State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.]

{¶ 29} "A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of federal constitutional rights. These include the right to trial by jury, the right of confrontation, and the privilege against self-incrimination. [*Boykin*] at 243-244. However, substantial compliance with Crim.R. 11(C) is sufficient when waiving non-constitutional rights. [*Nero* at 108.] The non-constitutional rights that a defendant must be informed of are the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no-contest plea, the court may proceed to judgment and sentence. Crim.R. 11(C)(2)(a), (b); *State v. Philpott,* Cuyahoga App. No. 74392, citing *McCarthy v.* [*United States*] (1969), 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418. Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving. *Nero* [at 108]."

{¶ 30} As we have previously noted, ineffective assistance of counsel is not established on this record. Our review of the plea and hearing indicates that the trial court scrupulously complied with all the mandates of Crim.R. 11(C)(2). The trial court thoroughly advised Goodner of the constitutional rights he was giving up by pleading no contest, as well as all the other nonconstitutional matters. Goodner indicated in each and every instance that he understood the matters explained to him by the trial court. Goodner indicated that he had no questions or concerns. This record affirmatively establishes that Goodner's no-contest pleas were entered knowingly, intelligently, and voluntarily.

{¶ 31} Goodner's first and fourth assignments of error are overruled.

III

{¶ 32} Goodner's second assignment of error is as follows:

{¶ 33} "The trial court erred in denying Mr. Goodner's motion to sever."

{¶ 34} In his second assignment, Goodner argues that the trial court erred when it denied his motion to sever the five counts of aggravated robbery in the indictment. Specifically, Goodner asserts that he would have been prejudiced by the joinder of offenses committed with the knife and baseball bat (Counts I and II) with the offenses committed with the BB gun (Counts III, IV, and V) because a BB gun does not fit the statutory definition of a deadly weapon. Goodner, however, did not advance this specific argument in his motion to sever that was ruled upon by the trial court.

{¶ 35} In his motion to sever, Goodner argued that he was "charged with five distinct counts of aggravated robbery, all containing different dates, locations, and

complainants." Goodner also asserted that the evidence with respect to each count would be complex and confusing to a jury. We note that totally absent from his motion to sever is any argument regarding a BB gun or its characterization as a deadly weapon. Accordingly, Goodner cannot raise this argument for the first time on appeal, and we will not address it.

{¶ 36} In *State v. Broadnax*, Montgomery App. No. 21844, 2007-Ohio-6584, we stated the following:

{¶ 37} "Crim.R. 8(A) provides:

{¶ 38} " 'Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.'

{¶ 39} "The law favors joinder to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish the inconvenience to witnesses. *State v. Schaim* (1992), 65 Ohio St.3d 51, 58; *State v. Torres* (1981), 66 Ohio St.2d 340, 343.

{¶ 40} "Crim.R.14 provides:

{¶ 41} " 'If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, information or complaints, the court shall

order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial.'

{¶ 42} "Even if offenses are properly joined pursuant to Crim.R. 8(A), a defendant may move to sever the charges pursuant to Crim.R. 14. To affirmatively show that his rights have been prejudiced by the joinder, the defendant must furnish the trial court information sufficient to allow the court to weigh the considerations favoring joinder against the defendant's right to a fair trial, and defendant must demonstrate that the court abused its discretion in refusing to separate the charges for trial. [*State v.*] *Glass* [(Mar. 9, 2001), Greene App. No. 2000CA74, 2001 WL 228453]*; State v Lott* (1990), 57 Ohio St.3d 160.

{¶ 43} "One of the ways in which the State can negate a defendant's claim of prejudice is by showing that the evidence pertaining to each crime joined at trial is simple and direct, such that the trier of fact could segregate the proof on the multiple charges. *Lott; Torres; State v. Rutledge* (June 1, 2001), Montgomery App. No. 18462. The purpose of this 'joinder test' is to prevent the jury from confusing the offenses or improperly cumulating the evidence of the various crimes. *Lott; Rutledge.*"

{¶ 44} The defendant in *Broadnax*, 2007-Ohio-6584, was indicted for five counts of aggravated robbery. In holding that the trial court properly denied the defendant's motion to sever, we noted that the evidence pertaining to each offense

was simple and direct. Id. Additionally, all the robberies involved different stores and different witnesses who independently identified the defendant as the perpetrator. Id. We further found that the evidence with respect to each offense was straightforward and uncomplicated and would, therefore, make it improbable that a jury would confuse the evidence or consider testimony regarding one offense as corroborative of the another. Id.

{¶ 45} In the instant case, joinder was clearly proper. Similar to the defendant in *Broadnax*, Goodner was indicted for five counts of aggravated robbery. Each of the robberies was of a same or similar character, and each involved a different store or restaurant. All the robberies were committed between the dates of January 19, 2010, and February 16, 2010. Witnesses from each robbery independently identified Goodner as the perpetrator. The evidence with respect to each robbery was simple and direct, and it is improbable that a jury would confuse the evidence or improperly consider testimony regarding one robbery as corroborative of another. Accordingly, Goodner has failed to demonstrate prejudice resulting from the joinder of the offenses for trial, and the trial court did not abuse its discretion when it denied his motion to sever.

{¶ 46} Goodner's second assignment of error is overruled.

IV

{¶ 47} Goodner's third assignment of error is as follows:

{¶ 48} "The trial court erred in admitting the evidence of Kay Waylan's identifications which were inherently suggestive and unreliable, and thereby a violation of due process."

{¶ 49} In his third assignment, Goodner contends that the trial court erred

when it overruled his motion to suppress. Specifically, Goodner asserts that the photo spreads shown to Kay Waylan by Detective Elzholz regarding the February 16, 2010 robbery at the Main Drive Thru were unduly suggestive.

{¶ 50} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac* (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 51} To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under the totality of the circumstances. *Manson v. Brathwaite* (1977), 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Simmons v. United States* (1968), 390 U.S. 377, 384. See also *State v. Broom* (1988), 40 Ohio St.3d 277, 284; *State v. Moody* (1978), 55 Ohio St.2d 64, 67.

{¶ 52} In *State v. Sherls* (Feb. 22, 2002), Montgomery App. No. 18599,

2002-Ohio-939, this court addressed the issue of suggestive photographic confrontations:

{¶ 53} "In many cases, and in almost all cases in which the criminal offender is not known to his victim or other eyewitnesses and is not arrested at the time of the crime, those who witness the crime are asked to identify the perpetrator for purposes of police investigation through some form of confrontation. This confrontation may be in the form of a 'lineup,' a one-on-one 'show up,' or from a photograph or series of photographs displayed to the witness. When any of these systems of confrontation suggest, due to the manner or mode of their presentation, that one individual is more likely than others to be the perpetrator of the crime, that fact increases the likelihood of misidentification and violates the right to due process of law of a defendant so identified. Identification testimony that has been tainted by an unduly or unnecessarily suggestive out-of-court confrontation may be suppressed on that basis.

{¶ 54} "However, even when a confrontation is unnecessarily or unduly suggestive, the identification testimony derived from the confrontation is not inadmissible solely for that reason. Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process.

{¶ 55} "Reliability is determined from the totality of the circumstances. These circumstances include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to

be weighed the corrupting effect of the suggestive identification itself.

{¶ 56} "The foregoing due process concerns are implicated only if and when a confrontation is unnecessarily or unduly suggestive. That prospect usually arises when the witness has been shown but one subject, whether in a 'showup' * * * or a single photograph * * *. Similarly, if the witness is shown pictures or photographs of several persons in which the photograph of one recurs or is in some way emphasized, undue suggestion may occur. However, even when the confrontation process is unduly or unnecessarily suggestive, the later identification testimony should not be excluded so long as the identification itself is reliable." See *State v. White* (Feb. 2, 1994), Clark App. No. 3057.

{¶ 57} In the instant case, Detective Elzholz showed Waylan two photographic arrays on February 24, 2010, approximately eight days after the robbery occurred at the drive-through. In her victim statement, Waylan described the perpetrator as a short, black male with an average build and a light complexion. Detective Elzholz testified that based on Waylan's description, he created a photo array comprised of six photos of black males with similar physical characteristics, one of which was a photo of Goodner. Detective Elzholz testified that he gave Waylan the following instructions before showing her the first photo spread:

{¶ 58} "Detective Elzholz: * * * I'm going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being invested. Keep in mind hairstyles, beards, and mustaches may be easily changed. Also photos may not always depict the true complexion of a person, it may be lighter or darker than shown in the photos. Pay no attention to any markings and numbers that may appear on the photos or any

differences in types or styles of photos.  When you've looked at all the photos tell me whether or not you see the person who committed the crime.  Do not tell any other witnesses if you have or have not identified anyone."

{¶ 59} Detective Elzholz then showed the photo array to Waylan, who immediately identified the photo in the second position, Goodner, as the perpetrator.  Detective Elzholz testified that he in no way influenced or coerced Waylan during the initial photo array identification.  After identifying Goodner in the first array, Waylan asked Detective Elzholz if she could see another photo of the number two individual from a different angle.  Detective Elzholz testified that he had left the drive-through and returned to the Safety Building in order to create a second photo array with a picture of Goodner in a different position.  The second array was also composed of six black males with similar physical characteristics.  In this instance, Goodner's photo was in the fifth position.  Detective Elzholz did not indicate to Waylan that the individual in the number two position in the first array was the individual in the fifth position in the second array.  After observing the second array, Waylan again immediately identified Goodner as the perpetrator.

{¶ 60} Other than his bare assertion, Goodner can point to no evidence in the record that demonstrates that showing Waylan a second photo containing Goodner's photo array was unduly suggestive.  The photographic arrays were randomly created using the Montgomery County Justice Web System.  Detective Elzholz testified at the suppression hearing that he followed the proper procedure in showing the two random photo arrays to Waylan, who was able to identify Goodner from both arrays as the individual who robbed her.  After a thorough review of the record, we find that there was nothing unduly suggestive regarding the process

used to identify Goodner as the perpetrator. Thus, the trial court did not err when it overruled Goodner's motion to suppress Waylan's identification of him.

{¶ 61} Goodner's third assignment of error is overruled.

V

{¶ 62} All of Goodner's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

GRADY, P.J., and WAITE, J., concur.

. . . . . . . . . .

GRADY, P.J., concurring.

{¶ 63} In *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, the Supreme Court wrote: "[I]t is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record." Defendant-appellant's claim that his trial counsel misadvised or failed to advise him that a BB gun is not a deadly weapon for purposes of R.C. 2923.11(A) are facts that do not appear in the record of this case. I would overrule the first assignment of error on that basis.

{¶ 64} Defendant-appellant's fourth assignment of error is predicated on the same factual claim and further assumes that the BB gun he had on his person when he was arrested was the "deadly weapon" that defendant-appellant used when he committed the five robbery offenses to which defendant-appellant entered pleas of no-contest. I would overrule the fourth assignment of error for the same reason: that the record fails to exemplify the error assigned.

. . . . . . . . . .

WAITE, J., concurring.

{¶ 65} With respect to the first and fourth assignments of error, I concur in the foregoing concurrence of Judge Grady. In all other respects, I concur in the foregoing opinion of Judge Donovan.

. . . . . . . . . .

Cheryl L. Waite, J., of the Seventh District Court of Appeals, sitting by assignment.