[Cite as *State v. Hall*, 2021-Ohio-2968.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals Nos.  L-20-1089
                                                                              L-20-1090
       Appellee

                                        Trial Court Nos.  CR0201901570
v.                                                                            CR0201902274


Willie Lewis Hall                                     **DECISION AND JUDGMENT**

       Appellant                                  Decided:  August 27, 2021

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Henry J. Schaefer, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} In this consolidated appeal, defendant-appellant, Willie Hall, appeals the

April 13, 2020 judgments of the Lucas County Court of Common Pleas which, following

a jury trial convicting him of aggravated murder, aggravated burglary, and burglary sentenced him to life imprisonment. Because we find no error in the trial court proceedings, we affirm.

{¶ 2} This appeal stems from two indictments charging appellant with crimes relating to the January 11, 2019 burglary, case No. CR-19-1570, and the February 3, 2019 murder and aggravated burglary, case No. CR-19-2274, occurring at the same residence on Broadstone Street in Toledo, Lucas County, Ohio.

{¶ 3} The state filed a motion to join the two indictments for trial and a notice of its intent to introduce the statements of victim, Benjamin Ward, and witness, B.W. Appellant opposed the filings. On November 14, 2019, the trial court granted the joinder motion finding that the two cases stemmed from a common scheme or continuous course of conduct and that the evidence in each case was simple and direct. The trial court further denied the opposition to the introduction of evidence determining that the statements were excited utterances and, as to Ward's statements to the officer responding the burglary, that they were admissible, non-hearsay as they were relevant to the course of the investigation.

{¶ 4} The trial in the matter commenced on March 9, 2020. Prior to voir dire, appellant renewed his objections to the court's ruling on the issue of joinder and the Evid.R. 404(B) rulings.

2.

## The January 11, 2019 Burglary

{¶ 5} On January 12, 2019, the victim, Ben Ward, called 911 to report that his home had been burgled. Police arrived at approximately noon and observed a cut screen in the main bedroom. Ward reported that the intruder stole a television, Xbox, Play Station 4, multiple games for each, a Rolex watch, various other jewelry items, approximately 15 pair of Nike Air Jordan athletic shoes, and $500 cash.

{¶ 6} It is undisputed that Ward lied to police. The testimony showed that the break-in occurred on January 11, 2019, and the intruder stole $3,000 cash, a few jars of marijuana, and possibly one pair of Nike Air Jordan athletic shoes. Ward lied to police to conceal the fact that he sold marijuana and to potentially allow him to file a claim on this renter's insurance.

{¶ 7} Ward consistently reported an unfamiliar glove he discovered in a bedroom which he placed on a table in the dining area. On January 12, he told police that he believed the glove belonged to his neighbor, Mike, and that he and Mike had an ongoing dispute. The officer took the glove as evidence. Following the February 3, 2019 murder of Ward, the glove was sent to the Bureau of Criminal Investigation (BCI) for DNA testing. During the January 12 interview, the responding officer had his body camera on and recording; there was no objection to the admission of the video. Also admitted were still photos taken from the video.

3.

{¶ 8} On March 22, 2019, Toledo Police Detective William Goodlet executed two search warrants relating to appellant: at his residence and his girlfriend's residence. At appellant's and his mother's residence on Chemsley Court, a driving distance of 2.3 miles from Ward's home, Goodlet recovered three Mason jars of marijuana. Goodlet also recovered a right-handed, latex coated work glove; he testified that the glove recovered from Ward's home was a left-handed glove that matched the right-handed glove.

{¶ 9} Levi Liner, Ward's longtime friend, testified that on January 11, 2019, at approximately 3:30 p.m., Ward telephoned him, upset and panicked, stating that someone in his neighborhood, specifically next-door-neighbor Mike Lowe, had broken into his home. Ward and Lowe had been in a fistfight four to five years prior. Liner stated that Ward was torn about whether to call the police due to the fact that he was involved in selling marijuana and had drug paraphernalia in the house. Liner testified that he told Ward that he should report the burglary and send a message to his neighbors that he was not afraid to get the police involved.

{¶ 10} The lead detective assigned to the burglary was Toledo Police Detective William White. After being assigned to the matter, White attempted to contact Ward but was unsuccessful. On February 4, 2019, he learned of Ward's murder. Through investigation of phone records and letters, Detective White learned that Ward's neighbor, Mike Lowe (AKA "White Boy Mike"), and appellant were friends. Detective White

4.

testified that Mike Lowe died on March 1, 2019, from a drug overdose; his cell phone was recovered and analyzed.

{¶ 11} Selena H. testified that she and appellant began dating in December 2018. At the time, he lived with his mother and did not have either a job or a car. She stated that she had met appellant's friend Mike, or "White Boy Mike," who lived on Broadstone. Selena testified that on January 12, 2019, she and appellant went to a shopping mall and he bought multiple pairs of shoes with cash.

### Murder and Aggravated Burglary of February 3, 2019

{¶ 12} Ward's friend Levi Liner testified that on February 3, 2019, Ward and his son, B.W., were at his home to watch the Super Bowl. He stated that they left at approximately 9:30 p.m. and that it took five to ten minutes to get to Ward's house. At 1:30 a.m., he was awakened to police detectives pounding on his door. They informed him that Ward and been killed. Liner told police about the burglary one month prior and the glove that Ward had turned over to police.

{¶ 13} The 911 call was placed at 9:46 p.m. and was played for the jury. Ward's son, then eight years old, told the dispatcher that someone shot his dad. He stated that he did not get a look at the suspect's face and that he did not see a vehicle driving away.

{¶ 14} Toledo Police Sergeant Zachary Jennings responded to the 911 call arriving at approximately 10:00 p.m. Approaching the doorway he observed an adult male lying face down and a young boy crouched down next to him with a cell phone in his hand.

5.

Jennings cleared the scene and observed that the likely point of entry was the window in the back bedroom which was open and the blinds look disturbed. In the same room, Jennings observed dresser drawers pulled out and removed. Jennings' body camera recorded the incident and the video was played for the jury.

{¶ 15} Toledo Police Officer Jeff Breeze arrived after Jennings; he encountered the victim's son, B.W., had the child close his eyes and he carried him out of the house. B.W. told Officer Breeze that a black man with scruffy facial hair came out of the back room and shot his dad. His bodycam video was played for the jury.

{¶ 16} Toledo Police Detective Scott Mills, crime scene investigator, testified that on February 3, 2019, at approximately 11:00 p.m., he processed the crime scene on Broadstone. Prior to his arrival, approximately ten officers had been on the scene. Mills collected multiple pieces of evidence, many were sent to the BCI for analysis, and took several photographs. Detective Mills testified that he observed signs of forced entry into the bedroom located in the rear of the home. Mills documented footwear impressions in the mud below the windows. There were additional, similar impressions throughout the back yard.

{¶ 17} Detective Mills testified regarding the window which was open and the broken glass pane and pry marks. Mills stated the he observed some horizontal striations which indicated that the suspect was likely wearing gloves. Consistent with this theory, Mills found no useable finger prints at the scene.

6.

{¶ 18} On the night of the homicide lead detective, Jeff Quigley, first proceeded to a home on McCord Road to question the minor witness. The child described the shooter, who he observed for only a few seconds, as a black male with a beard and mustache, flat top hairstyle, gray sweatshirt with black dots, and white shoes. Quigley then proceeded to the crime scene which was being processed. Quigley continued on to Levi Liner's house. Detective Quigley testified that Liner was "devastated" upon hearing that his friend had been killed. He informed Quigley that Ward's home had been burglarized in the last 30 days.

{¶ 19} Detective Quigley stated that during the investigation they learned that appellant and Ward's next-door-neighbor, Mike Lowe, were acquaintances. Quigley went to Lowe's home after learning that he died of a possible drug overdose. At the home, Quigley collected a 40 caliber Taurus. It was forensically test-fired and compared to the shell casings found at the crime scene; it was not a match. Quigley testified that by analyzing appellant's phone they discovered that appellant and Lowe attempted to contact each other 21 times beginning approximately 16 minutes after the murder.

{¶ 20} Toledo Police Detective William White similarly stated that appellant's and Lowe's phones had contact on February 3, 2019 at approximately 10:01 p.m. In the hours following Ward's murder, the phones had contact 21 times. There were also photographs on appellant's phone depicting a large "wad" of cash and a Sig Sauer semiautomatic handgun.

7.

{¶ 21} Detective White testified that appellant's cousin also lived on the 1900 block of Broadstone Street. On February 3, 2019, at 11:28 p.m., his cousin texted appellant "4 of July," which has a common meaning of a lot of red, white, and blue police lights. Detective White further testified that on February 4, 2019, appellant received a text from his brother stating: "luv u, stay focus and go on like ur day like u never dropped hot ass single." White surmised that it referred to dropping, or killing, a person.

{¶ 22} DNA testing of the glove recovered from Ward's home was conducted by the BCI which also received DNA standards from appellant, Benjamin Ward, and Mike Lowe. Benjamin Ward and Mike Lowe were excluded from the major profile; appellant was included in the major profile. The likelihood of the frequency of the major profile was calculated to be one in one trillion. The DNA swab from the pistol frame revealed appellant as the major contributor with a rarer than one on one hundred million occurrence. Several other items from Ward's home were tested but did not link appellant to the crime.

{¶ 23} The BCI also analyzed latent fingerprints and footwear impressions left outside the window at the crime scene. The items fingerprint tested were largely found insufficient for comparison. As to the footwear impressions analysis, the BCI agent compared the images with appellant's submitted Nike shoes; she stated that the shoes could have made the impressions. The agent clarified that it was a weak association.

8.

{¶ 24} On March 22, 2019, Sergeant Shaner arrested appellant at his girlfriend's home on a burglary arrest warrant; he was also a suspect in the Ward homicide investigation. At the girlfriend's home, police found the frame to a Sig Sauer P226 handgun. Sergeant Shaner testified that the barrel and slide were missing which would prevent any ballistic testing on the weapon. Rubber gloves were also recovered.

{¶ 25} Toledo Police Detective David Morford testified that on March 28, 2019, he created an extraction report of the operating system logs from appellant's cell phone. The dates encompassed January 11 and 12, 2019, and February 2, 3, and 4, 2019. The extraction included items such as the contacts in the phonebook, incoming and outgoing phone calls and text messages and images. The report was admitted into evidence.

{¶ 26} FBI cell phone analyst Jacob Kunkle testified that when analyzing cell phone records he is able to discern where the device is located during a particular time frame. Kunkle was asked to review appellant's and his girlfriend's cell phones in conjunction with the burglary and murder location on Broadstone, appellant's and his girlfriend's residences. The dates included January 1 through February 5, 2019.

{¶ 27} Appellant's residence was largely serviced by the same cell tower as the Broadstone address, though each tower had sectors or sides which could refine the location of the phone in relation to the tower. Appellant's cell phone was analyzed for the cell tower it was using and calls and messages from 12:19 p.m. and 4:20 p.m., on January 11, 2019. Nothing from 3:28 until 4:11 p.m. indicated that the phone was not in

9.

use or turned off. On February 3, 2019, from 9:08 to 9:09 p.m., an outgoing and an incoming call were logged on the phone. There was no activity on the phone from 9:09 until 9:45 p.m.; again, this indicated that the phone was not in use or turned off. Based on the different sectors used, Agent Kunkle testified that at 9:45, appellant's phone was using the tower and sector closest to the victim's house. From 9:45 until 9:59 p.m., the "environment for [appellant's] phone was changing." Exhibits relating to Kunkle's testimony were admitted into evidence.

{¶ 28} Toledo Police Detective Jay Gast conducted an analysis of the Google search records of the Gmail account attributed to appellant. The day prior to Ward's murder, appellant searched whether a Sig Sauer P22640 could be turned into a "full auto." On February 3, at approximately 11:30 p.m., appellant searched the Toledo Blade newspaper website. The following morning appellant again searched the Toledo Blade website, specifically for "homicide 2019," as well as multiple local news sites. He also specifically viewed an article "man shot killed inside south Toledo home." There were additional searches specifically relating to homicides.

{¶ 29} Gast also reviewed the AT & T internet search history for the cell phone associated with appellant. Gast stated that on February 3, 2019, there were three Toledo Blade searches. On February 4, there were 32, on February 5, there were 43. These multi-page records were admitted into evidence.

10.

{¶ 30} Gast was questioned about appellant's searches relating to the homicide. Specifically, the fact that he was friends with the victim's neighbor and that his cousin lived two doors down. Gast acknowledged that based on these facts, it would be normal to seek more information about the situation.

{¶ 31} Toledo Police Detective Terry Cousino testified that he created a composite sketch, which he termed an investigation tool, during the February 6, 2019 interview with the deceased's minor son. Cousino acknowledged that he initially felt that B.W. may be able to provide an accurate description. Cousino learned that B.W. was only able to observe the suspect for a brief period of time. B.W. made very few changes to the original, rough sketch which is uncommon. Due to the limited time B.W. had to observe the victim and his inability to refine the sketch, Cousino stated that the police opted not to release it to the public.

{¶ 32} Toledo Police Detective Anthony Sosko testified that on March 8, 2019, he participated in administering a photo array relating to Ward's murder to B.W. Sosko, as a blind administrator, did not participate in choosing the photos and had no knowledge as to whether the suspect was one of the six individuals depicted. Detective Sosko stated that B.W. did select a photo and indicated that he was 60 to 90 per cent sure that he was the man who shot his father. Although appellant's photo was included in the array, B.W. chose a different individual. Detective Sosko stated that the lapse in time combined with the young age of the witness could have impacted the array.

11.

{¶ 33} Toledo Police crime scene investigator Benjamin Cousino testified that on October 29, 2019, he swabbed a Sig Sauer P226 pistol frame for DNA. Dave Cogan, laboratory administrator for the police crime lab and firearms examiner, testified that he tests guns for operability as well as examining shell casings to determine if they were fired from a particular weapon. Cogan testified that he examined two shell casings collected from the crime scene on Broadstone; he determined that they were fired from the same weapon.

{¶ 34} Cogan examined the projectile recovered during Ward's autopsy. He determined that it could have come from several types of firearms including a Sig Sauer. Cogan also examined the firearm frame recovered from appellant's house; he stated that an operational 40 caliber Sig Sauer would be capable of firing the shell casings collected at Broadstone.

{¶ 35} The autopsy of Ward revealed a gunshot wound to his right shoulder, entering above the clavicle. The bullet went through the subclavian artery and vein and through the top of the chest cavity and right lung before being stuck in the right shoulder blade. The bullet travelled a downward trajectory of approximately two inches from entry to where it rested. The cause of death was listed as a gunshot wound to the lower neck, upper chest; the manner of death was homicide. Several exhibits depicting the findings were admitted into evidence.

12.

{¶ 36} Selena H. testified that on the evening of February 3, 2019, she and appellant were texting about seeing each other that evening. At 8:46 p.m., appellant stated that he was busy. Appellant next texted at 9:53 p.m. and stated that he was ready to be picked up from his mother's place. At some point after, the police searched her apartment.

{¶ 37} Following appellant's arrest, Selena stated that she visited him and that they exchanges phone calls and letters. Selena admitted that after receiving a certain letter she ripped it up and threw it away. In the letter appellant told her to throw away his pair of shoes, black Nikes that were at her house. She left them on the side of the road near a school.

{¶ 38} In another letter, appellant instructed Selena to tell police that on January 4, 2019, they went to Mike's house and appellant helped him unload bathroom tiles from his truck and that appellant was wearing gloves. He further instructed her to say that he only had one glove when he returned to the car. Selena testified that she could not remember anything about gloves. The letters revealed that appellant encouraged her to lie to police and that appellant, in general, did not want Selena talking with police.

{¶ 39} Following the presentation of the state's case, appellant moved for acquittal under Crim.R. 29; the motion was denied. The defense then rested. Following deliberations, the jury found appellant guilty of all the charges. On April 13, 2020,

13.

appellant was sentenced to life imprisonment without the possibility of parole; this appeal followed with appellant raising seven assignments of error for our consideration:

I. The trial court erred when it granted the state's motion for joinder.

II. Appellant's counsel was ineffective when no objection was made for joinder at the close of the state's presentation of evidence.

III. The court erred in admitting the testimony of Benjamin Ward and B.W.

IV. Appellant's counsel was ineffective when no objection was made to exclude the statements of Benjamin Ward and B.W. at trial.

V. The court erred in excluding appellant's evidence offered in his defense.

VI. The trial court erred in not permitting the re-cross of witnesses.

VII. The trial court erred in that appellant's convictions were against the manifest weight of the evidence and were not supported by the sufficiency of the evidence in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitution.

**Joinder, Failure to Object and Ineffective Assistance of Counsel**

{¶ 40} Appellant's first and second assignments of error argue that the separate indictments should not have been joined for trial. Appellant contends that the joinder

allowed the jury to convict appellant for murder based upon evidence "fabricated" by the victim in regards to the burglary.

{¶ 41} Under Crim.R. 13, a court may order two or more cases to be tried together "if the offenses * * * could have been joined in a single indictment * * *." Joinder of two or more separate offenses in an indictment, information or complaint is proper "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). Joinder is generally favored as it preserves judicial economy and public funds, avoids multiple trials and inconvenience to witnesses, and allows for prompt and consistent trial results. *State v. Scott*, 6th Dist. Sandusky No. S-02-026, 2003-Ohio-2797, ¶ 13, quoting *State v. Dunkins*, 10 Ohio App.3d 72, 72, 460 N.E.2d 688 (9th Dist.1983).

{¶ 42} If a party opposing the joinder of indictments demonstrates prejudice, the trial court shall order separation of the counts under Crim.R. 14. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 20-21, citing *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. In order to affirmatively show that his rights have been prejudiced by the joinder, the defendant must furnish the trial court with information sufficient to allow the court to weigh the considerations favoring joinder against the defendant's right to a fair trial; to obtain reversal on appeal, the defendant

must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial. *State v. Goodner*, 195 Ohio App.3d 636, 2011-Ohio-5018, 961 N.E.2d 254, ¶ 42 (2d Dist.). Accordingly, we review a trial court's decision on severance under an abuse of discretion standard. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

{¶ 43} Upon review, we agree that joinder of the indictments was permissible under Crim.R. 8(A). The two incidents were closely related in time, involved the same individuals, and were similarly executed. We must now determine whether appellant was prejudiced by the joinder. For the state to counter appellant's claim of prejudice, the first method requires a showing that, pursuant to Evid.R. 404(B), evidence of the other charged offenses would be admissible even if the counts or indictments had been severed for trial. Under the second method, often referred to as the "joinder" test, the state is simply required to show that evidence of each crime joined at trial is simple and direct. When the state shows that the evidence of each crime is simple and direct, it is not required to meet the stricter "other acts" admissibility test. *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224, L-09-1225, 2010-Ohio-4202, ¶ 30, citing *Lott*, 51 Ohio St.3d at 163-164 and *State v. Hicks*, 6th Dist. Lucas Nos. L-04-1021, L-04-1022, 2005-Ohio-6848, ¶ 30, 41. "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant

overlap or conflation of proof.'" *State v. Stuckman*, 6th Dist. Sandusky Nos. S-17-039, S-17-040, 2018-Ohio-4050, ¶ 39, quoting *Lewis* at ¶ 33.

{¶ 44} Reviewing the evidence presented at trial, we find it to be straightforward and easily separable. On January 11, 2019, appellant broke into Ward's house on Broadstone and stole money and marijuana. He left a glove at the scene of the crime and the match was found at his residence. Following the burglary, he was photographed with a large sum of cash, he paid cash for multiple items, though unemployed, and jars of marijuana like the ones stolen were found in his mother's bedroom. On February 3, 2019, appellant again broke into Ward's home. As to those crimes, much of the testimony centered on appellant's cell phone calls, texts, and Google searches. Also prominent were letters to appellant's girlfriend instructing her to get rid of a certain pair of shoes and encouraging her to lie to police.

{¶ 45} Appellant's chief argument is that he was prejudiced by the joinder in that his convictions were based on "fabricated" evidence surrounding the first burglary. First, as will be discussed below, appellant's counsel stipulated to the introduction of the January 12, 2019, bodycam video where victim Ward undisputedly lied to police regarding several key facts surrounding the incident. Appellant's characterization of the presentation of this evidence as the state allowing false evidence to be admitted at trial is disingenuous. The jury was fully apprised of the fact that Ward lied; the state did not present perjured testimony. Defense counsel used Ward's lies to cast doubt on the state's

17.

evidence.  Further, Ward expressed belief that his neighbor, Mike Lowe, was the perpetrator.

{¶ 46} Accordingly, we find that joinder of the indictments for trial was proper and that appellant did not demonstrate prejudice.  Appellant's first assignment of error is not well-taken.

{¶ 47} Appellant's second assignment of error similarly argues that counsel was ineffective when he failed to object to joinder of the indictments at the close of the state's presentation of evidence.  In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.  A defendant must establish both prongs of the standard to demonstrate ineffective assistance of counsel. *Strickland* at 687.

{¶ 48} Reviewing appellant's argument, he acknowledges belief that counsel's written objection to joinder and renewal of the objection prior to trial were sufficient to

18.

preserve the issue for appeal. Above, we found that joinder of the indictments for trial was appropriate; thus, we cannot find that had counsel again raised the objection at the close of the state's evidence that the court would have granted the motion. Appellant's second assignment of error is not well-taken.

**Admission and Exclusion of Evidence at Trial**

{¶ 49} Appellant's third through sixth assignments of error challenge the admission or exclusion of certain evidence at trial. Appellant's third and fourth assignments of error argue that the trial court erred, and counsel was ineffective, in relation to the admission of the statements of Benjamin Ward and B.W.

{¶ 50} Appellant argues that they trial court erred in permitting the evidence because it failed to, after finding that the evidence was admissible due to hearsay exceptions, "fully apply the tests for admission." Specifically, as to the statements made by Ward on January 12, 2019, when speaking with police, and recorded by bodycam, appellant argues that the court failed to find that the statements were testimonial hearsay.

{¶ 51} As set forth above, appellant objected to the state's notice of its intent to use the above evidence. However, as correctly noted by the state, at trial appellant's counsel stipulated to the admission of the bodycam video. Further, during cross-examination counsel questioned Officer Johnson about the items Ward claimed were stolen and the fact that he had lied about the items as well as the date of the burglary. Counsel further exploited the fact that Ward expressed a strong belief that his neighbor,

19.

Mike Lowe, had committed the burglary. Accordingly, appellant cannot now claim error that he invited by stipulating to the admission of the evidence. *See State v. Jackson*, 157 Ohio App.3d 574, 2004-Ohio-3446, 812 N.E.2d 1002, ¶ 10 (6th Dist.).

{¶ 52} Next, appellant contends that the statements of B.W., following his excited utterances made at the time of the murder, were inadmissible. Specifically, B.W.'s description of the suspect for the sketch artist, his identification of someone else in the photo array, and any subsequent police questioning. Appellant asserts that no showing of unavailability was made.

> A drawing of an alleged assailant sketched by a police artist, a poster reproduction of that drawing, a 'mug shot' of the accused taken after arrest, and the testimony of police officers as to statements describing the accused made to them by a prosecuting witness, are admissible solely to indicate the process by which the accused was identified, where that process is under attack, and to corroborate that identification.

*State v. Lancaster*, 25 Ohio St.2d 83, 267 N.E.2d 291 (1971), paragraph four of the syllabus. Thus, where testimony was admitted for the purpose of explaining how the image was produced it is not hearsay. *State v. Lavender*, 2019-Ohio-5352, 141 N.E.3d 1000, ¶ 116 (1st. Dist.).

{¶ 53} Further, as to the photo array, even assuming that the testimony regarding B.W.'s identification was hearsay, its admission was harmless error as B.W. did not

20.

identify appellant as the assailant. Finally, appellant fails to support his general contention regarding subsequent police questioning of B.W. with references to the record; thus, it is rejected. Appellant's third assignment of error is not well-taken.

{¶ 54} In appellant's fourth assignment of error, appellant again raises an ineffective assistance of counsel claim regarding the admission of the testimony challenged above. As previously set forth, proof that trial counsel was ineffective requires a showing that counsel's errors negatively impacted the outcome of the trial. Further, debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). The fact that B.W. could not refine his description of the suspect for the sketch artist and that he did not choose appellant as the suspect out of a photo array certainly supported appellant's case and counsel's failure to object was a sound trial strategy. Appellant's fourth assignment of error is not well-taken.

{¶ 55} In his fifth assignment of error, appellant contends that the trial court erred when it excluded three exhibits appellant offered in his defense. The exhibits related to the distance between appellant's and the victim's home; appellant was attempting to impeach the testimony by Agent Kunkle that the distance was "just over one mile" when, in fact, it was 2.3 miles.

{¶ 56} The admission or exclusion of evidence is within the trial court's discretion. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). A reviewing

21.

court "will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has suffered material prejudice." *State v. Long*, 53 Ohio St.2d 91, 98, 372 N.E.2d 804 (1978).

{¶ 57} During cross examination, FBI Agent Kunkle was asked to estimate the distance between appellant's and the victim's house. He stated: "As the crow flies that distance would be probably just over a mile." Kunkle was then questioned about the fact that the correct distance was 2.3 miles; he agreed that the distance would be consistent with the scale on the map. At that point, appellant's counsel sought to introduce a "draft" map, the author of which did not testify, and email communications between he and Agent Kunkle related thereto. The court sustained the state's objection finding that the individual who created the document was neither testifying nor likely qualified to testify.

{¶ 58} Reviewing the arguments of the parties and the proffered exhibits, we cannot say that the trial court abused its discretion when it barred admission of the evidence. Further, Agent Kunkle agreed that the driving distance could be 2.3 miles; thus, the proffered evidence was before the jury. Appellant's fifth assignment of error is not well-taken.

{¶ 59} Appellant's sixth assignment of error argues that the trial court erred in not allowing re-cross examination of witnesses. Permission to re-cross examine a witness generally comes within a trial court's discretion; however, where new areas are inquired into on redirect, the trial court is to allow the opportunity to recross-examine. *Johnson v.*

22.

*Emergency Physicians of Northwest Ohio at Toledo, Inc.*, 2013-Ohio-322, 986 N.E.2d 595, ¶ 21 (6th Dist.), citing *State v. Faulkner*, 56 Ohio St.2d 42, 46, 381 N.E.2d 934 (1978).

{¶ 60} During redirect examination of Agent Kunkle, the state first asked him to clarify the cell phone activity on January 11, 2019. Defense counsel objected stating that the question exceeded the scope of his cross-examination and the objection was sustained. Defense counsel again objected to a similar question pertaining to February 3, 2019; the objection was again sustained. At the conclusion of Agent Kunkle's redirect testimony appellant's counsel approached the bench and stated:

> [I]t has been your habit through the course of the trial so far after redirect to excuse the witness. I understand that that may be in the nature of your particular style or policy, but I would note that there have been witnesses where defense would have sought a recross-examination and to the extent that that might be permitted by law and has not been offered I would seek to note an objection.

{¶ 61} Reviewing appellant's argument, we note that at the time counsel noted his general objection he neither requested re-cross examination of Kunkle nor did he indicate what questions he would have asked to either Kunkle or any of the prior witnesses. Thus, we cannot find that the court abused its discretion. Appellant's sixth assignment of error is not well-taken.

23.

**Weight and Sufficiency of the Evidence**

{¶ 62} Appellant's seventh and final assignment of error asserts that appellant's convictions were against the weight of the evidence and were not supported by sufficient evidence. Appellant's claims on appeal center around his theory that the victim fabricated the January 11 burglary in order to conceal his illegal enterprise and to perpetrate insurance fraud and that the prosecution used this false crime to bolster the evidence relating to the murder charge.

{¶ 63} Sufficiency of the evidence and manifest weight of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency of the evidence is purely a question of adequacy where a court must consider whether the evidence was sufficient to support the conviction as a matter of law. *Id.* The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 64} Conversely, a claim that a jury verdict is against the manifest weight of the evidence requires an appellate court to act as a "thirteenth juror." *Thompkins* at 387. An appellate court,

24.

"reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*Sufficiency*

{¶ 65} As to appellant, the charge of aggravated murder required proof that appellant purposely caused the death of another while committing or attempting to commit, or fleeing after committing, aggravated burglary. R.C. 2903.01(B). Appellant contends that the evidence was insufficient to convict appellant of aggravated murder because the only eyewitness could not identify appellant and the conviction was based on a fabricated burglary.

{¶ 66} Reviewing the evidence presented to the jury we conclude that it was sufficient to support the conviction. Appellant's cell phone records place him in the area at the time of the murder and his phone was turned off during the time of the first burglary and subsequent murder. Shoe impressions consistent with the shoes he asked his girlfriend to get rid of were found outside the victim's window. Appellant also asked

25.

his girlfriend to lie about various events leading to the murder. His dismantled firearm was not inconsistent with the murder weapon. Further, appellant received a text message from his brother just after the murder urging him to stay calm despite having just "dropped a hot ass single."

{¶ 67} As to the appellant's aggravated burglary and burglary convictions, appellant argues that the state failed to prove that appellant, as required under R.C. 2911.11(A)(1), trespassed into an occupied structure to commit a criminal offense. Appellant argues that the fact that appellant fabricated many details of the initial burglary, that he had an ongoing dispute with his neighbor which, although he was not a major contributor, his DNA was on the glove, that although marijuana containers consistent with Ward's were found in appellant's mother's bedroom she, not appellant, was charged with possession, and that none of Ward's extensive shoe collection was found in appellant's possession.

{¶ 68} Again, reviewing the evidence presented to the jury the state provided sufficient evidence to support the convictions. A rational trier of fact could conclude that while Ward lied about various details of the burglary, he was honest about the fact that there was a burglary and finding the glove in the back bedroom. Appellant's DNA found on the glove, as a major contributor, and the matching glove found at his home. Evidence was presented that as to each incident the intruder entered by force with the intent to commit a criminal act.

26.

*Manifest Weight*

**{¶ 69}** Appellant argues that his convictions were against the weight of the evidence. Reviewing all of the evidence, we find the jury did not lose its way in evaluating the evidence and drawing inferences. It was within the province of the jury to believe the evidence presented by the state as to the facts of the January 11, 2019 burglary despite the fact that the victim lied to conceal his illegal enterprise and to potentially file a fraudulent renter's insurance claim. Such evidence included the testimony of Ward's sister and friend as to Ward's state-of-mind following the burglary and reason he delayed reporting the matter to police.

**{¶ 70}** Likewise, the jury's verdicts relative to the February 3, 2019 aggravated burglary and aggravated murder were supported by the weight of the evidence. Including the recent burglary implicating appellant, the testimony of appellant's girlfriend and the extensive testimony regarding appellant's cell phone records including texts and Google searches, all supported the state's theory that appellant had returned to Ward's home to commit another burglary but was interrupted by Ward and his son.

**{¶ 71}** Therefore, we find that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Appellant's seventh assignment of error is found not well-taken.

27.

**{¶ 72}** Accordingly, we affirm the April 13, 2020 judgments of the Lucas County Court of Common Pleas. Pursuant to App.R. 24, appellant is to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.